
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON, )
) No. 67959-7-I
Respondent, )
) DIVISION ONE
v. )
) PUBLISHED OPINION
WILLIAM NEAL FRANCE, )
)
Appellant. ) FILED: September 9, 2013
)

APPELWICK, J. — France pleaded guilty to nine counts of felony harassment. He had six prior felony convictions. The trial court imposed an exceptional sentence on all nine counts, based in part on the "free crimes" aggravator and in part on the officer of the court aggravator. France argues that the free crimes aggravator could not lawfully attach to three current offenses, because they increased his offender score to a "9 or more" and therefore did not go unpunished. We affirm France's exceptional sentence, but remand for correction of the two clerical errors in the judgment and sentence.

## FACTS

This appeal arises from William France's 180 month exceptional sentence for felony harassment of three women—Anita Paulsen, Nina Beach, and Lisa Daugaard. Paulsen, a public defense attorney at The Defender Association, represented France in a previous case. Beach was also involved in the previous case as France's social worker. Unsatisfied with his representation, France began leaving graphic voicemails with both women threatening to stalk them, sexually assault them, and then "put a bullet" in them. Paulsen notified Daugaard, deputy director at The Defender

Association, who sent France a cease and desist letter. France then began leaving Daugaard similar threatening voicemails. All three women feared for their safety and contacted the Seattle Police Department.

The State charged France by amended information with 16 counts of felony harassment. The State alleged two aggravating factors: that France's conduct manifested deliberate cruelty to the victims (all 16 counts) and was committed against officers of the court (counts 1-11).

The parties entered a plea agreement in which France agreed to plead guilty to nine counts of felony harassment as follows: counts 3, 4, 6 (against Paulsen), counts 7, 8, 9 (against Daugaard), and counts 12, 14, 15 (against Beach). In exchange, the State recommended dismissing the remaining seven counts and removing the deliberate cruelty aggravator. France stipulated that the officer of the court aggravator applied to the six counts (3, 4, 6, 7, 8, and 9) against Paulsen and Daugaard.

France also agreed that his prior felony convictions counted as six points toward his offender score. His current offenses counted as eight points, resulting in an offender score of 14. Based on his offender score of 9 or more, the standard range sentence for each count was 51 to 60 months. The plea statement provided: "The sentences imposed on counts 3, 4, 6, 7, 8, 9, 12, 14, [and] 15 . . . will run concurrently unless there is a finding of substantial and compelling reasons to do otherwise." But, the State indicated its intent to seek an exceptional sentence on all counts based on the free crimes aggravator. As a result, the State recommended 180 months total confinement, consisting of exceptional consecutive sentences as follows: 60 months on counts 3, 4,

2

6, concurrent to each other; 60 months on counts 7, 8, 9, concurrent to each other; and 60 months on counts 12, 14, 15, concurrent to each other.

During the plea colloquy, France acknowledged that the officer of the court aggravator attached to counts 3, 4, 6, 7, 8, and 9. He also acknowledged that no statutory aggravator attached to counts 12, 14, and 15. The State explained its sentence recommendation:

> [B]asically on Counts 12, 14 and 15, there would be a base sentence of 60 months with no aggravator, Counts 3, 4 and 6 there would be 60 months consecutive based on the aggravator of officer of the court, and then Counts 7, 8 and 9 would run consecutive to both of those based on the aggravator of officer of the court.

However, the State reiterated that it would be seeking an exceptional sentence on the additional basis that France's high offender score resulted in some of his current offenses going unpunished, essentially receiving free crimes.

The trial court adopted the State's recommendations and sentenced France to 180 months confinement as follows: counts 3, 4, 6 shall run concurrent to each other and consecutive to all others; counts 7, 8, 9 shall run concurrent to each other and consecutive to all others; and counts 12, 14, 15 shall run concurrent to each other and consecutive to all others. The court justified the exceptional sentence based on the frequency and "truly alarming" nature of the voicemails. The court found little hope for France's rehabilitation. Therefore, the function of the sentence "really comes down to protection." Moreover,

> [I]n this case we are dealing with the very underpinning of our democracy, and that is the right to protection and constitutional protection, and we have dedicated officers performing that duty, and we need to make sure that they are safe and able to perform that duty without such threats.

3

The court explained that it relied on both the free crimes aggravator and the officer of the court aggravator, but that either alone would have been sufficient.

France appeals.

## DISCUSSION

France challenges the trial court's authority to impose an exceptional sentence based on the free crimes aggravator on three of his current offenses. He also argues that there is a clerical error in the judgment and sentence stating that the officer of the court aggravator attached to all nine counts. Lastly, he contends that the trial court imposed a community custody condition when it had no statutory authority to do so.

## I. Free Crimes Aggravator

A defendant's standard range sentence reaches its maximum limit at an offender score of "9 or more." RCW 9.94A.510. An offender score is computed based on both prior and current convictions. RCW 9.94A.525(1). For the purposes of calculating an offender score when imposing an exceptional sentence, current offenses are treated as prior convictions. State v. Newlun, 142 Wn. App. 730, 742, 176 P.3d 529 (2008). Where a defendant has multiple current offenses that result in an offender score greater than nine, further increases in the offender score do not increase the standard sentence range. See State v. Alvarado, 164 Wn.2d 556, 561-63, 192 P.3d 345 (2008). However, a trial court may impose an exceptional sentence under the free crimes aggravator when "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). In other words, if the number of current offenses results in the legal conclusion that the defendant's presumptive sentence is identical to that which would be

4

imposed if the defendant had committed fewer current offenses, then the court may impose an exceptional sentence. Newlun, 142 Wn. App. at 743.

France's prior felony convictions contributed six points toward his offender score. Three more current offenses were needed before France's offender score reached nine points on the sentencing grid. Therefore, France contends, those three current offenses were punished, because they increased his standard range sentence. Only six remaining counts would go unpunished if France was sentenced within the standard range. According to France, then, only six of his crimes are subject to an exceptional sentence, because the free crimes aggravator cannot lawfully attach to the three punished crimes. He contends that those three punished crimes must then run concurrently with the six unpunished counts. Therefore, he argues, his sentence should be 120 months instead of 180 months, and remand for resentencing is required to rectify the error.

To reverse an exceptional sentence, we must find: (1) under a clearly erroneous standard, there is insufficient evidence in the record to support the reasons for imposing an exceptional sentence; (2) under a de novo standard, the reasons supplied by the sentencing court do not justify a departure from the standard range; or (3) under an abuse of discretion standard, the sentence is clearly excessive or clearly too lenient. RCW 9.94A.585(4); State v. Law, 154 Wn.2d 85, 93, 110 P.3d 717 (2005). The second standard of review applies here, because France challenges the trial court's authority to construct the exceptional sentence as it did. He does not argue that 180 months is clearly excessive.

In construing the free crimes aggravator, our primary duty is to ascertain and carry out the legislature's intent. Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010). Statutory interpretation begins with the statute's plain meaning. Id. If the statute's meaning is unambiguous, our inquiry ends. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007). A statute is ambiguous when it is susceptible to two or more reasonable interpretations. State v. Gonzalez, 168 Wn.2d 256, 263, 226 P.3d 131 (2010). However, a statute is not ambiguous merely because different interpretations are conceivable. Id.

The free crimes aggravator is triggered when the defendant's high offender score combines with multiple current offenses to leave "some of the current offenses going unpunished." RCW 9.94A.535(2)(c) (emphasis added). The legislature could have specified that "only those current offenses going unpunished are subject to an exceptional sentence." But, it did not do so. Nor does the statute specify that the trial court must find that all current offenses would go unpunished. Rather, use of the word "some" contemplates a situation like France's where some current offenses contribute to the defendant's offender score and some go unpunished. Then, once the defendant has some current offenses going unpunished, the trial court's discretion to impose an exceptional sentence on all current offenses is triggered. RCW 9.94A.535(2)(c) makes no distinction between punished and unpunished crimes, because all current offenses are subject to an exceptional sentence. Merely because France proposes a conceivable interpretation of RCW 9.94A.535(2)(c) does not make it ambiguous. We decline to read ambiguity into the statute where there is none.

6

The trial court has "'all but unbridled discretion'" in fashioning the structure and length of an exceptional sentence. State v. Halsey, 140 Wn. App. 313, 325, 165 P.3d 409 (2007) (quoting State v. Creekmore, 55 Wn. App. 852, 864, 783 P.2d 1068 (1989)); see also Law, 154 Wn.2d at 93. For instance, the trial court here could have imposed a 20 month sentence on each count, to run consecutively, achieving the same 180 month sentence. Or, the court could have sentenced France to 180 months on each count, to run concurrently. See State v. Batista, 116 Wn.2d 777, 785-86, 808 P.2d 1141 (1991) (recognizing the trial court's authority to impose an exceptional sentence by lengthening concurrent sentences or imposing consecutive sentences). The trial court here clearly intended to impose an exceptional sentence of 180 months and had authority to do so, because France had some current offenses going unpunished.[1]

Case law does not compel a different result. France relies primarily on State v. Stephens to argue that an exceptional sentence like the one here improperly penalizes a defendant twice for the same crime. 116 Wn.2d 238, 803 P.2d 319 (1991), overruled in part by State v. Hughes, 154 Wn.2d 118, 140, 110 P.3d 192 (2005), abrogated on other grounds by Washington v. Ruenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 411 (2006). In Stephens, the defendant committed eight counts of second degree

---

[1] The judgment and sentence states that counts 3, 4, and 6 "shall run concurrent to each other [and] consecutive to all others" and counts 7, 8, and 9 "shall run concurrent to each other [and] consecutive to all others." France argues this is a clerical error, because it conflicts with the court's oral ruling that counts "7, 8, and 9 are concurrent with each other, but consecutive to the previous three counts." However, clerical errors exist if, based on the record, the judgment does not embody the trial court's intention. State v. Rooth, 129 Wn. App. 761, 770, 121 P.3d 755 (2005). The court clearly intended to impose 60 months for each set of crimes, grouped by victim, to run consecutively to one another. To interpret the judgment and sentence as a clerical error thwarts that intention.

7

burglary. 116 Wn.2d at 239. Because of his high offender score, his presumptive sentence would be the same had he committed only two burglaries instead of the eight. Id. at 241-42. The six "free" burglaries justified an exceptional sentence of eight concurrent 96-month sentences. Id. at 239, 246. The Washington Supreme Court upheld the sentence, reasoning that "although the crimes were counted in calculating the offender score, most of them had no effect on the sentence because Stephens' score was '9 or more' already. Thus, Stephens would not be penalized twice if the multiple crimes were considered toward an exceptional sentence." Id. at 244. France seizes upon this language. But, the Stephens court went on to hold that a defendant, "being sentenced for multiple current offenses, no one of which would warrant an exceptional sentence, [may] receive an exceptional sentence based on the number of crimes committed." Id. at 243-44.

Likewise, in State v. Brundage, the defendant committed multiple current offenses, including first and second degree rape. 126 Wn. App. 55, 67, 107 P.3d 742 (2005). Brundage's prior offenses resulted in eight offender score points Id. at 67. His current unlawful possession of a firearm conviction added one point to his offender score for a total of nine. Id. With an offender score of nine, Brundage's standard range sentence for the first degree rape was 240 to 318 months. Id. at 61, 67. The second degree rape conviction increased his offender score to 12. Id. The sentencing grid ends at nine, though, so Brundage's standard range sentence remained 240 to 318 months. Id. at 67. Because the second degree rape would go unpunished if the trial court imposed a standard range sentence, an exceptional sentence was justified to ensure Brundage did not receive a free crime. Id. at 67, 69. The second degree rape

conviction with an offender score of 12 had a standard range of 210 to 280 months. Id. at 61, 67. The court upheld an exceptional sentence of 498 months for the first degree rape and 400 months for the second degree rape, to run concurrently. Id. at 69. The Brundage court did not consider the issue France argues here. Nevertheless, in that case, one current offense going unpunished justified an exceptional sentence on both current offenses. See id. Imposing an exceptional sentence for both crimes was consistent with the legislature's stated purpose to "'[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history.'" Id. (alteration in original) (quoting RCW 9.94A.010(1)).

Six of France's current offenses would go unpunished if he received a standard range sentence, triggering the judge's discretion to impose an exceptional sentence based on RCW 9.94A.535(2)(c). We hold that the trial court acted within its authority to impose an exceptional sentence on all nine counts of felony harassment.

II.  Clerical Error in the Judgment and Sentence

Under "SPECIAL VERDICT or FINDING(S)," the judgment and sentence provided: "[X] Aggravating circumstances as to count(s) III, IV, VI, VII, VIII, IX, XII, XIV, XV: OFFICER OF THE COURT AGGRAVATOR." France stipulated that the officer of the court aggravator applied only to counts 3, 4, 6, 7, 8, and 9. The judgment and sentence incorrectly states that the aggravator attached to counts 12, 14, and 15. The State concedes that this is a clerical error. Accordingly, we remand to the trial court for correction of this error. In re Pers. Restraint of Mayer, 128 Wn. App. 694, 701, 117 P.3d 353 (2005).

9

III.    No Contact Order

France argues that the trial court imposed a community custody condition of no contact when it lacked statutory authority to do so.  In the judgment and sentence, a box was checked stating, "[X] APPENDIX H for Community Custody conditions is attached and incorporated herein."  Appendix H is a no-contact order prohibiting France from contacting the three victims.  The Sentencing Reform Act of 1981 (SRA) does not authorize a court to impose community custody for felony harassment.  See RCW 9.94A.701; see also In re Postsentence Review of Childers, 135 Wn. App. 37, 41, 143 P.3d 831 (2006).

However, the SRA does authorize trial courts to impose crime-related prohibitions as a condition of sentence, independent of community custody.  RCW 9.94A.505(8); State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).  A no-contact order is one such crime-related prohibition.  In re Pers. Restraint of Rainey, 168 Wn.2d 367, 376, 229 P.3d 686 (2010).  The record demonstrates that the court imposed the no-contact order as a condition of sentence rather than a condition of community custody.  Section 4.5 of the judgment and sentence specifies: "NO CONTACT: For the maximum of 15 years, the defendant shall have no contact with see attached Appendix H."  Section 4.7 lists community custody conditions, but is not checked.  Community custody conditions are not checked later in the judgment, either.  Appendix H says nothing about community custody.  The court acknowledged in its oral ruling that it had no authority to impose supervision, but was ordering no contact.  And, the no-contact order is scheduled to last only the length of the sentence.  For these reasons, we

10

decline to vacate the no-contact order. We remand to the trial court to correct the erroneous reference to community custody conditions.

We affirm France's exceptional sentence, but remand for correction of the two clerical errors in the judgment and sentence.

*Applewick, J.*

WE CONCUR: