# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48465-0-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| JAMIL ALKITAB AL WALI MUTAZZ, | |
| Appellant. | |

MAXA, A.C.J. – Jamil Alkitab Al Wali Mutazz appeals his conviction for possession of a stolen vehicle and his sentence. He argues that the State did not present sufficient evidence that he knew the vehicle he was driving was stolen. In a statement of additional grounds (SAG), Mutazz also challenges the trial court's imposition of an exceptional sentence for his convictions of possession of a stolen vehicle and attempting to elude a pursuing police vehicle.

We hold that (1) the State presented sufficient evidence to prove that Mutazz knew that the vehicle was stolen, and (2) the trial court did not err in imposing an exceptional sentence based on the rapid recidivism and free crimes aggravating factors. Accordingly, we affirm Mutazz's conviction for possession of a stolen vehicle and his exceptional sentence.

## FACTS

Around 5:00 AM on February 28, 2015, Young Kim drove his Lexus to his dry cleaning business in Seattle. Kim went inside, but he left the keys in the car. While Kim was inside, his

employee Juan Galvan-Garcia saw a black man in a dark colored hooded sweatshirt get into the car and drive away. Galvan-Garcia could not see the man's face.

Kim immediately reported to police that his Lexus was stolen. Around 8:48 AM Tacoma police officer Timothy Fredericks spotted the Lexus, which was parked. When Fredericks drove by the car he saw a person who he later identified as Mutazz in the driver's seat, but did not see anyone else in the car. Fredericks radioed that he had seen the stolen Lexus and started to turn around. Then he saw Mutazz back the car out of the parking spot and drive off.

Fredericks and Pierce County sheriff's deputy Ryan Olivarez both activated their marked cars' overhead lights to pull over the Lexus, but Mutazz sped away and a chase ensued. During the pursuit, the Lexus was damaged after running over spike strips placed in its path by law enforcement. Mutazz drove the damaged car into an alley, hit a tree stump, and ran away on foot. Olivarez ran after Mutazz and arrested him.

The State charged Mutazz with possession of a stolen vehicle, attempting to elude a pursuing police vehicle, second degree assault, and resisting arrest. Kim, Galvan-Garcia, Fredericks and Olivarez testified at trial, as did other law enforcement officers who were involved in the investigation.

Mutazz also testified at trial. He stated that he obtained the Lexus in Federal Way during a drug transaction. He did not know the name of the person who gave him the car, but said he had thought he had seen him before in Tacoma. He said that the man was in the passenger seat while Mutazz was driving. He also testified that he tried to get away from the police because he was under Department of Corrections (DOC) supervision, had been using drugs when he was parked, and still had some drugs with him.

The jury found Mutazz not guilty of the second degree assault charge and found him guilty of possession of a stolen vehicle, attempting to elude a pursuing police vehicle, and resisting arrest.

At the sentencing hearing, the trial court entered findings of fact and conclusions of law to support an exceptional sentence for Mutazz's convictions for possession of a stolen vehicle and attempting to elude a pursuing police vehicle. The trial court found that two aggravating factors applied. First, Mutazz committed the offenses shortly after his release from jail, which was 11 days earlier. Second, Mutazz was convicted of multiple current offenses and his high offender score[1] would result in one of his current offenses going unpunished if a standard-range sentence was imposed.

The trial court sentenced Mutazz to 57 months – the high end of the standard range – for the possession of a stolen vehicle conviction. For the attempting to elude a pursuing police vehicle conviction, the trial court imposed a 43 month sentence, which was above the standard range. The trial court also ordered that the sentences run consecutively for a total of 100 months in confinement.[2]

Mutazz appeals his conviction for possession of a stolen vehicle and his exceptional sentence for his possession of a stolen vehicle and attempting to elude a pursuing police vehicle convictions.

---

[1] Mutazz's offender score was calculated to be 40+ for the possession of a stolen vehicle conviction and 20 for the attempting to elude a pursuing police vehicle conviction.

[2] The trial court also sentenced Mutazz to 90 days for the resisting arrest conviction to run concurrently with the 100 months.

ANALYSIS

A.   SUFFICIENCY OF THE EVIDENCE

Mutazz argues that the State failed to present sufficient evidence that he knew the Lexus was stolen. We disagree.

1.   Standard of Review

When evaluating the sufficiency of evidence for a conviction, the test is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). We will assume the truth of the State's evidence and all reasonable inferences drawn from that evidence when evaluating whether sufficient evidence exists. *Id.* at 106. We treat circumstantial evidence as equally reliable as direct evidence. *State v. Farnsworth*, 185 Wn.2d 768, 775, 374 P.3d 1152 (2016). And we defer to the trier of fact's resolution of conflicting testimony and evaluation of the persuasiveness of the evidence. *Homan*, 181 Wn.2d at 106.

2.   Legal Principles

RCW 9A.56.068(1) states that a person is guilty of possession of a stolen vehicle if the person "possess[es] . . . a stolen motor vehicle." RCW 9A.56.140(1) defines what it means to possess stolen property:

> "Possessing stolen property" means knowingly to receive, retain, possess, conceal, or dispose of stolen property *knowing that it has been stolen* and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

(Emphasis added.) The trial court gave an unchallenged jury instruction that stated these definitions. The trial court's to-convict instruction required the State to prove that Mutazz "acted with knowledge that the motor vehicle had been stolen." Clerk's Papers at 118.

Showing possession alone is not sufficient to prove guilty knowledge, but "possession together with slight corroborating evidence of knowledge may be sufficient." *State v. Scoby*, 117 Wn.2d 55, 61-62, 810 P.2d 1358, 815 P.2d 1362 (1991). Sufficient corroborating evidence to prove guilty knowledge includes "the giving of a false explanation or one that is improbable or is difficult to verify." *State v. Ladely*, 82 Wn.2d 172, 175-76, 509 P.2d 658 (1973) (holding that the fact that the defendant gave three different explanations for how he came to possess the stolen property was sufficient to show guilty knowledge). And evidence of flight can support an inference of consciousness of guilt. *See State v. McDaniel*, 155 Wn. App. 829, 853-54, 230 P.3d 245 (2010).

3. Analysis

Mutazz argues that the State only presented evidence that he possessed the Lexus, which was not sufficient to show that he knew the car was stolen. He points out that (1) Galvan-Garcia could not identify Mutazz as the man he saw steal the Lexus, (2) Mutazz was not seen in the Lexus until a few hours after it was stolen, (3) there was no obvious indication that the car was stolen, and (4) Mutazz testified that he fled from police because he had been doing drugs and was on DOC supervision.

But the State presented evidence that Mutazz was a black man who had a dark colored hoodie with him at the time of his arrest, which was consistent with Galvan-Garcia's description of the man who stole the Lexus. That evidence supports an inference that it was Mutazz who

stole the Lexus. And Mutazz fled from police, driving at high speeds to try to evade them and later fleeing on foot, which supports an inference that Mutazz had consciousness of his guilt. Although Mutazz testified that he fled because he had drugs and not because he knew the car was stolen, the jury was free to weigh Mutazz's credibility, consider the extreme measures he took to avoid arrest, and infer that he knew the car was stolen.

Finally, Mutazz's testimony about how he acquired the Lexus was improbable and impossible to verify. Mutazz said he acquired the car during a drug transaction in Federal Way, but he could not specify where exactly the transaction occurred and did not know the name of the man who gave him the Lexus or where that man lived. Mutazz also testified that the man was with him in the car, but neither Fredericks nor Olivarez saw another person in the car. And another officer who arrived at the location of the abandoned Lexus did not see any other occupants. This evidence supports an inference that Mutazz gave a fabricated and false explanation.

Viewing the evidence in the light most favorable to the State, we hold that there was sufficient corroborating evidence in addition to Mutazz's possession to prove that Mutazz knew the Lexus was stolen.

B.    IMPOSITION OF EXCEPTIONAL SENTENCE

1.  Rapid Recidivism Aggravating Factor

In his SAG, Mutazz argues that the rapid recidivism aggravating sentencing factor was inapplicable because shortly before this incident he had been confined as a sanction for violating DOC supervision, not for a criminal conviction. We disagree.

Under RCW 9.94A.535(3)(t) [3], one factor that can support a sentence above the standard range is that "[t]he defendant committed the current offense shortly after being released from incarceration." This factor is known as the "rapid recidivism" aggravating factor. *State v. Williams*, 159 Wn. App. 298, 309, 244 P.3d 1018 (2011). Here, Mutazz was released from jail on February 17, 2015, only 11 days before he committed the offenses for which he was sentenced. This period of time clearly qualifies as "shortly after being released." *See State v. Zigan*, 166 Wn. App. 597, 604-05, 270 P.3d 625 (2012) (holding no error in applying rapid recidivism aggravator when crime was committed just over two months after release).

However, Mutazz points outs that he had been in jail as a sanction for violating the terms of DOC supervision, not because he was serving a sentence for another offense. On October 22, 2014 he was released from prison after serving a sentence for two felonies and placed on DOC supervision. Mutazz argues that the term "incarceration" in RCW 9.94A.535(3)(t) should be interpreted as confinement for an offense, not confinement for a community supervision violation. Therefore, he claims that October 22, 2014 and not February 17, 2015 should have been the relevant date for application of the rapid recidivism factor.

The Sentencing Reform Act (SRA), chapter 9.94A RCW, does not define "incarceration." Therefore, we may resort to the dictionary to discern the plain meaning of incarceration. *State v. Kintz*, 169 Wn.2d 537, 547, 238 P.3d 470 (2010). The dictionary defines incarceration as "a confining or state of being confined." WEBSTER'S THIRD NEW

---

[3] RCW 9.94A.535 has been amended since the events of this case transpired. However, these amendments do not impact the statutory language relied on by this court. Accordingly, we do not include the word "former" before RCW 9.94A.535.

INTERNATIONAL DICTIONARY 1141 (2002). Under this definition, Mutazz's confinement for violating DOC supervision imposed because of a felony conviction constitutes incarceration.

In addition, we consider related provisions and the statutory scheme as a whole when considering the plain language of a statute. *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). When interpreting other SRA provisions, courts have held that "confinement pursuant to a felony conviction" includes confinement for violation of a community supervision term imposed based on the felony. *State v. Mehrabian*, Wn. App. 678, 714, 308 P.3d 660 (2013); *State v. Blair*, 57 Wn. App. 512, 515-17, 789 P.2d 104 (1990). Under these cases, there is no distinction between confinement for a felony and confinement for violating DOC supervision imposed based on that felony.

Accordingly, we hold that the trial court did not err in applying the rapid recidivism aggravating factor.

2. Free Crimes Aggravating Factor

In his SAG, Mutazz also argues that the trial court erred in finding that his high offender score would lead to some of the current offenses going unpunished. We disagree.

Under RCW 9.94A.535(2)(c), one factor that can support an exceptional sentence is that "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." This factor is known as the "free crimes" aggravating factor. *State v. France*, 176 Wn. App. 463, 468-69, 308 P.3d 812 (2013). Once the trial court determines that some of the defendant's offenses will go unpunished, it has discretion to impose an exceptional sentence on all current offenses. *Id.*

Here, Mutazz had 68 prior convictions, including 18 felonies. His offender score was calculated at 40+ for possession of a stolen vehicle and 20 for attempting to elude a pursuing police vehicle. An offender score of 9+ is all that is needed to reach the highest standard sentencing range for a crime. RCW 9.94A.510; *France*, 176 Wn. App. at 468.

If the trial court had imposed concurrent sentences, the maximum standard range sentence for Mutazz's convictions would have been 57 months – the maximum sentence for possession of a stolen vehicle. The trial court correctly determined that in light of Mutazz's offender scores well over 9+ and his multiple current offenses, a 57 month sentence would result in some of his current offenses going unpunished. By imposing a sentence above the standard range for attempting to elude a pursuing police vehicle and ordering that Mutazz's possession of a stolen vehicle and attempting to elude a pursuing police vehicle sentences run consecutively, the trial judge ensured that Mutazz received a punishment for each crime.

Accordingly, we hold that the trial court did not err in finding that Mutazz's high offender score would result in some of the multiple current offenses going unpunished.

C.      APPELLATE COSTS

Mutazz asks that we exercise our discretion to deny any appellate costs the State may request. A commissioner of this court will consider whether to award appellate costs in due course under the newly revised provisions of RAP 14.2 if the State decides to file a cost bill and if Mutazz objects to that cost bill.

No. 48465-0-II

CONCLUSION

We affirm Mutazz's conviction for possession of a stolen vehicle and affirm his exceptional sentence for possession of a stolen vehicle and attempting to elude a pursuing police vehicle.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

WORSWICK, J.

SUTTON, J.

10