# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Respondent,<br><br>        v.<br><br>KEVIN ROBERT BRYSON,<br><br>               Appellant. | DIVISION ONE<br><br>No. 79653-4-I<br><br>UNPUBLISHED OPINION |

DWYER, J. — Following his conviction of 11 counts of violation of a no-contact order, three counts of residential burglary, one count of harassment, and one count of stalking (with domestic violence pleaded and proved for all convictions), Kevin Bryson appeals. On appeal, he avers that the sentencing court erroneously included three prior felony convictions in the calculation of his offender score as "9 or more." Bryson also asserts entitlement to further relief in a statement of additional grounds. Because the sentencing court properly calculated the offender score by omitting the three prior felony convictions, his sentence falls within the appropriate standard range. Bryson's asserted additional grounds for relief are without merit.

Accordingly, we affirm.

I

Kevin Bryson and Kellie Hickok were married and had four children together.  By July 5, 2018, Hickok had obtained a no-contact order and a civil protection order against Bryson.  The following day, at around 2:21 a.m., Bryson entered Hickok's home.  Hickok telephoned police.  However, Bryson left before police arrived.

On September 10, 2018, at 2:54 a.m., Bryson removed Hickok's bedroom window screen, reached into her bedroom, and moved a fan that was on the windowsill.  Later that day, at 8:30 p.m., Bryson returned to Hickok's home.  Sue Bryson[1], Bryson's mother who lived in a separate home on the same property, telephoned 911 and reported that Bryson was in Hickok's home and had threatened to kill her.  Bryson was subsequently arrested.

On September 11, Sue obtained a protection order against Bryson.  From September 18 through September 30, Bryson made multiple attempts through a third party to contact Sue in violation of this protection order.

Bryson was charged with three counts of residential burglary, one count of stalking, one count of harassment, and 12 counts of violation of a no-contact order, with domestic violence alleged as an aggravating factor for each.  One charge of violation of a no-contact order was later dismissed.  On January 25, 2019, a jury convicted Bryson on all other counts.

At the sentencing hearing, the State presented sentence ranges based on an offender score of "9 or more" for the felony convictions of stalking,

---

[1] Because Kevin and Sue Bryson share a surname, we refer to Sue by her first name to avoid confusion. No disrespect is intended.

harassment, and residential burglary. Although the State mentioned that Bryson had three prior felony convictions, it did not rely on these convictions in calculating its standard range recommendations. The sentencing court noted that all three prior felony convictions were more than 10 years old. Ultimately, the trial court imposed upon Bryson a total of 96 months of confinement, the high end of the standard range for the stalking conviction. All other sentences were ordered to be served concurrently with this sentence.

Bryson appeals.

II

Bryson avers that the trial court erroneously included the three prior felony convictions in calculating his offender scores on the various felony convictions. This was wrong, Bryson contends, because the prior felony convictions were more than 10 years old and, thus, had washed out. We disagree. His argument is based on a false premise. There is no evidence in the record to indicate that the sentencing court included the prior felony convictions in its offender score calculations. Rather, the sentencing court correctly calculated Bryson's offender scores based solely on his other current convictions.

We review a disputed calculation of an offender score de novo. State v. Rodriguez, 183 Wn. App. 947, 953, 335 P.3d 448 (2014).

Pursuant to the Sentencing Reform Act of 1981, chapter 9.94A RCW, standard sentence ranges are set forth in a sentencing grid, the inputs for which are an offender score and the seriousness level of the offense. See RCW 9.94A.510. The standard sentencing range increases as the seriousness level

and offender score increase.  See RCW 9.94A.510.  The seriousness level is a numerical value representing the legislature's determination of the gravity of the convicted offense.[2]  See RCW 9.94A.520.  The offender score is a numeric representation of previous and current criminal history and is calculated according to a point accrual system devised by the legislature.  See RCW 9.94A.525.  For the purposes of calculating the offender score for one offense, other current offenses are treated as prior offenses.  RCW 9.94A.589(1)(a).  When more than 8 points count toward the offender score, the legislature categorizes the offender score as "9 or more."  RCW 9.94A.510.

The sentencing court correctly calculated Bryson's offender score as "9 or more" as to each felony conviction being sentenced.  Domestic violence was pleaded and proved for each conviction.[3]  As such, Bryson's offender score as computed for the current offense of residential burglary included: 11 convictions of violation of a no-contact order, accruing one point per conviction (11 points); a single conviction for stalking, accruing two points (2 points); a single conviction for harassment, accruing two points (2 points); and two other concurrent residential burglary convictions, accruing two additional points each (4 points) — for a total of 19 points.  See RCW 9.94A.525.  His score was thus "19," which the legislature deems to be "9 or more."  See RCW 9.94A.510.

Likewise, Bryson's offender score as computed for the current offense of stalking included: 11 convictions of violation of a no-contact order, accruing one

---

[2] The seriousness levels for the felony offenses of conviction herein are as follows: Stalking – DV, level 5; Residential Burglary – DV, level 4; and Harassment – DV, level 3.

[3] This is significant because pleaded and proved domestic violence can change point allocation, as it did herein, pursuant to RCW 9.94A.525(21).

point per conviction (11 points); a single conviction for harassment, accruing two points (2 points); and three convictions for residential burglary, accruing one point for each conviction (3 points) — for a total of 16 points. See RCW 9.94A.525. His score was thus "16," which the legislature deems to be "9 or more." See RCW 9.94A.510.

Similarly, Bryson's offender score as computed for the current offense of harassment included: 11 convictions of violation of a no-contact order, accruing one point each (11 points); a single conviction for stalking, accruing two points (2 points); and three convictions for residential burglary, accruing one point for each conviction (3 points) — for a total of 16 points. See RCW 9.94A.525. His score was thus "16," which the legislature deems to be "9 or more." See RCW 9.94A.510.

Thus, as to each felony conviction for which he was being sentenced, Bryson's offender score was properly "9 or more."

Indeed, Bryson's current offenses properly accrue an offender score of "9 or more" without the inclusion of the three prior felony convictions that Bryson avers were erroneously included therein. This is significant because an offender score "reaches its maximum limit" when it exceeds 9 points. State v. France, 176 Wn. App. 463, 468, 308 P.3d 812 (2013). Any further increases in an offender score greater than 9 "do not increase the standard sentence range." France, 176 Wn. App. at 468. Because Bryson's current convictions alone result in his earning an offender score of "9 or more," the standard ranges as determined by the sentencing court were correct. The record does not support Bryson's

contention that any prior, "washed out" convictions were included in the sentencing court's computations.

III

In a statement of additional grounds, Bryson avers that he received ineffective assistance of counsel because his attorney told him "that nothing [he] could be convicted of was more than a misdemeanor and [he was] reassured [that he] could not be found guilty of [a] felony."

Our analysis of a claim of ineffective assistance of counsel begins with a strong presumption that counsel was effective. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995). To sustain a claim of ineffective assistance of counsel, Bryson must demonstrate (1) that his counsel's representation was deficient and (2) that there is a reasonable probability that, but for the counsel's deficient representation, the result of the proceeding would have been different. McFarland, 127 Wn.2d at 334-35. Both prongs of the Strickland test must be satisfied or the claim is not sustained. Strickland, 466 U.S. at 687.

First, there is nothing in the record supporting Bryson's contention that his attorney had reassured him that he would not be convicted of a felony. Even assuming the validity of his contention, however, Bryson still fails to demonstrate how such a statement from his attorney negatively affected the outcome of the proceeding. Bryson's failure to substantiate a reasonable probability that, but for his attorney's errors, the result of the proceeding would have been altered, fails

6

to overcome the presumption that his "counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Thus, Bryson has not demonstrated that his convictions were the product of "a breakdown in the adversary process caused by deficiencies in counsel's assistance." Strickland, 466 U.S. at 700.

Moreover, there is no evidence in the record demonstrating that, but for the alleged errors of Bryson's counsel, Bryson would have enjoyed a more favorable outcome than that which occurred. Because Bryson points us to nothing that would show that his attorney's performance negatively affected the outcome of the proceeding, and in light of the abundant evidence against him, he fails to satisfy the Strickland test. Strickland, 466 U.S. at 687. Accordingly, he does not demonstrate an entitlement to relief on this claim.

Lastly, Bryson directs our attention to efforts he has made, while incarcerated, to reform his behavior. Assuming the sincerity of these efforts, he is commended. However, these efforts, while noteworthy, do not impact the validity of his judgment and sentence.

7

Affirmed.

WE CONCUR: