**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59465-0-II |
| Respondent, | Consolidated No. 59471-4-II |
| v. | UNPUBLISHED OPINION |
| KAMRIN ALEXANDER KERR, | |
| Appellant. | |

CHE, J. — Kamrin Kerr appeals his exceptional sentence imposed following a global settlement of two criminal cases in which he pleaded guilty. Following Kerr's guilty plea in both cases, the State asked the trial court to impose the parties' joint recommendation of an exceptional sentence in the 2024 case, and a standard sentence in the 2023 case, and to run the two sentences concurrently. After determining that the recommendation was too lenient, the trial court adopted the parties' exceptional sentence recommendation in the 2024 case and imposed a standard range sentence in the 2023 case but made it an exceptional sentence by running the sentences in the two cases consecutively. The trial court based its decision to impose an exceptional sentence on the free crimes aggravator because Kerr's offender score in the 2023 cases was 10. The trial court included Kerr's juvenile adjudications in calculating his offender score in the 2023 case.

Kerr argues that the trial court improperly included his juvenile criminal adjudications in his offender score and based its decision to impose an exceptional sentence on improper judicial fact finding. We disagree with both arguments and affirm Kerr's sentence.

No. 59465-0-II
Consolidated No. 59471-4-II

In Cowlitz County cause number 23-1-00379-08 (2023 case), the State charged Kerr with possession of a controlled substance with intent to deliver with a firearm sentencing enhancement, first degree unlawful possession of a firearm, and second degree criminal trespass based on conduct on April 18, 2023.

While the 2023 case was pending, Kerr was involved in two other incidents. The first incident occurred in August 2023, and involved Kerr assaulting two Good Samaritans who intervened when they believed Kerr was kidnapping a woman. The second incident occurred in January 2024, and involved Kerr stabbing two Good Samaritans who intervened during a domestic violence incident with the same woman from the August 2023 assault.

In January 2024, based on both incidents, the State charged Kerr with two counts of first degree assault with a deadly weapon sentencing enhancement on each count, felony harassment, two counts of second degree assault, and unlawful imprisonment under Cowlitz County cause number 24-1-00074-08 (2024 case). The State filed notice to seek an exceptional sentence because the offenses were committed against victims acting as Good Samaritans under RCW 9.94A.535(3)(w).

Following negotiations, in March 2024, Kerr agreed to plead guilty to an amended information in both cases. In the 2024 case, Kerr pleaded guilty to four counts of second degree assault and one count of felony harassment. The State reduced two counts from first degree assault and removed the two deadly weapon sentencing enhancements. The parties agreed to an exceptional sentence of 180 months in that case based on the fact that the assaults were committed against Good Samaritans.

In the 2023 case, Kerr pleaded guilty to possession of a controlled substance with intent to deliver and first degree unlawful possession of a firearm, and the State dismissed criminal trespass and the firearm sentencing enhancement. The State recommended the court sentence Kerr to a standard sentence of 90 months. Overall, the State recommended that the court adopt the agreed recommendation of 180 months and run the sentences in both cases concurrently.

The trial court rejected the joint recommendation, and instead ran the sentences in each case consecutively based on the free crimes aggravator. In the 2024 case the court followed the parties' joint recommendation for the agreed upon exceptional sentence of 180 months. The trial court found that in the 2023 case, Kerr pleaded guilty to more than one felony and had an offender score of 10 in each count, based in part on Kerr's previous juvenile criminal offenses, which did not include murder in the first or second degree or class A felony sex offenses. The trial court sentenced Kerr to the low end of the standard sentence range on each count based on Kerr's young age at the time of the offenses, concurrent to each other, but consecutive to the 2024 case, making both the sentences exceptional.[1]

The trial court explained its reasoning for deciding not to further mitigate the sentence based on Kerr's youth.

> In 2019 Kerr was committed to JRA for 15 weeks after committing an assault in the second degree and a burglary in the second degree. In 2020 he was again committed to JRA, this time for 103 to 129 weeks after committing an attempted burglary in the first degree, and unlawful possession of a firearm in the first degree. The juvenile system is geared toward rehabilitation, unlike the adult system where the primary purpose of the SRA remains punishment. Kerr's chance at

---

[1] The trial court ordered 84 months at the sentencing hearing and in the judgment and sentence, but in the findings of fact and conclusions of law said it erred and would change the sentence to 87 months. The court clarified it intended to sentence Kerr to 180 months plus 87 months for a total of 267 months.

rehabilitation was better in a system geared toward rehabilitation and to date Kerr's criminal behavior has escalated.

Kerr's actions reflect a pattern of dangerousness despite his opportunities to rehabilitate. Selling fentanyl is not an impulsive act. Repetitive acts of unlawfully possessing firearms are not impulsive acts. Selling fentanyl done in combination with unlawful possession of a firearm reflects an emersion in a dangerous criminal lifestyle, not youthful impulsivity.

Clerk's Papers (CP) (Sept. 18, 2024) at 44.

Kerr appeals.

ANALYSIS

I. APPLICABILITY OF RCW 9.94A.525(1)(b)

Kerr argues that the trial court improperly included his prior juvenile criminal history in his offender score calculation in the 2023 case based on RCW 9.94A.525(1)(b), which became effective prior to his sentencing. We disagree.

When Kerr committed his offenses in April 2023, former RCW 9.94A.525(7) provided, "If the present conviction is for a nonviolent offense . . . count one point for each adult prior felony conviction and one point for each juvenile prior violent felony conviction and 1/2 point for each juvenile prior nonviolent felony conviction." Possession of a controlled substance with intent to deliver and unlawful possession of a firearm are both nonviolent offenses. RCW 9.94A.030(33).[2]

In July 2023, the legislature amended RCW 9.94A.525(1) by adding subsection (b), which states that juvenile "adjudications of guilt . . . which are not murder in the first or second

---

[2] This statute has been amended since Kerr's offenses, but the amendment does not affect our analysis. We cite the current version of the statute.

degree or class A felony sex offenses may not be included in the offender score." RCW 9.94A.525(1)(b). This amendment took effect on July 23, 2023. See LAWS OF 2023, ch. 415. Kerr was sentenced in March 2024, after the amendment took effect.

We recently held that RCW 9.94A.525(1)(b) does not apply prospectively to sentencings that occur following the enactment of the amendment if the underlying offense was committed before the amendment was enacted. *State v. Solomon Gibson*, 33 Wn. App. 2d. 618, 621-24, 563 P.3d 1079, *review denied*, 4 Wn.3d 1035 (2025). We acknowledge that the parties did not have the guidance of *Solomon Gibson* at the time they wrote their briefs.

Here, the underlying offenses took place in April 2023 before the amendment took effect. Therefore, we follow *Solomon Gibson* and hold that RCW 9.94A.525(1)(b) does not apply to Kerr's resentencing. Thus, the trial court did not err in calculating Kerr's offender score using his prior juvenile convictions.

## II. EXCEPTIONAL SENTENCE

Kerr also argues that his exceptional sentence was based on improper judicial fact finding. We disagree.

We will reverse an exceptional sentence only if, "under a clearly erroneous standard, there is insufficient evidence in the record to support the reasons for imposing an exceptional sentence;" the reasons given do not justify an exceptional sentence under a de novo standard; or the sentence is clearly excessive or clearly too lenient under an abuse of discretion standard. *State v. France*, 176 Wn. App. 463, 469, 308 P.3d 812 (2013).

With a few exceptions, sentences imposed for two or more current offenses are served concurrently and consecutive sentences may only be imposed as an exceptional sentence under

RCW 9.94A.535. *See* RCW 9.94A.589. RCW 9.94A.535(2)(c) provides that a "trial court may impose an aggravated exceptional sentence without a finding of fact by a jury" in cases where a "defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." A defendant's standard range sentence reaches its maximum limit at an offender score of "'9 or more,'" based on both prior and current convictions. *France*, 176 Wn. App. at 468; RCW 9.94A.510, .525(1).

Where, as here, a defendant has multiple current offenses that result in an offender score greater than nine, additional increases in the score above nine do not increase the standard range. *France*, 176 Wn. App. at 468. Once the court determines that one or more of the defendant's current offenses will go unpunished, it has discretion to impose an exceptional sentence on all current offenses. *State v. Smith*, 7 Wn. App. 2d 304, 309-11, 433 P.3d 821 (2019).

Here, Kerr's offender score in the 2023 case was 10 and the trial court expressly stated that it was imposing an exceptional sentence based on the fact that some of Kerr's criminal behavior would go unpunished absent the consecutive sentencing of the cases. On appeal, Kerr does not challenge the trial court's finding that the free crimes aggravator applied. Rather, he focuses his argument on the trial court's other findings, contending that these findings amounted to improper judicial fact finding and do not support an exceptional sentence.

But Kerr takes the trial court's findings out of context. Kerr contends that the court based Kerr's exceptional sentence "at least in part, on judicial factfinding that Kerr's criminal behavior has escalated since 2019, that he has engaged in a repetitive pattern of dangerousness, and that he has demonstrated no sign of rehabilitation following his release from JRA." Br. of Appellant at 24. While the trial court did make these findings, they were expressly made in regard to why the

No. 59465-0-II
Consolidated No. 59471-4-II

trial court declined to further mitigate Kerr's sentence on the basis of his youth. Contrary to Kerr's contention on appeal, the trial court clearly based its imposition of an exceptional sentence on the free crimes aggravator, and then explained its decision not to further mitigate the sentence based on Kerr's youthfulness due to what the court found to be a pattern of dangerousness, not youthful impulsivity.

The Sentencing Reform Act of 1981, chapter 9.94A RCW, requires the trial court to consider the act's purposes, including "providing punishment which is just," RCW 9.94A.010(2), before imposing an exceptional sentence, RCW 9.94A.535. That is precisely what the trial court did here. And the trial court explained in its findings of fact and conclusions of law that it was relying on the free crimes aggravator as the basis for the exceptional sentence.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Che, J.

We concur:

Glasgow, P.J.

Price, J.