# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59562-1-II |
| Respondent, | |
| v. | |
| JACOBI LYNN WEEKLY, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—A jury convicted Jacobi Weekly of two counts of second degree rape against the same victim, one count of second degree assault against a different victim, and three counts of witness tampering. Weekly was sentenced before the Washington Supreme Court decided *State v. Blake*, 197 Wn.2d 170, 481 P.3d 521 (2021). After *Blake*, Weekly's offender score was reduced, but his offender score remained 9 or more points on all counts.

Weekly was resentenced to an exceptional sentence under the free crimes aggravator based on the trial court's finding that his witness tampering counts would go unpunished if the trial court ran all sentences concurrently. Accordingly, the trial court ordered that the witness tampering sentences would run concurrently to each other but consecutively to the other counts for a total indeterminate sentence of 340 months to life.

Weekly appeals, arguing the trial court did not have authority to impose an exceptional sentence under the free crimes aggravator because his high offender score for the rape charges was the result of statutory multipliers. We disagree and affirm.

FACTS

I. BACKGROUND

Over the course of an evening, Weekly raped one woman twice and physically assaulted another woman, who was his girlfriend at the time. *State v. Weekly*, No. 53583-1-II, slip op. at 1-2 (Wash Ct. App. Feb. 23, 2022) (unpublished).[1] Later, while in pretrial custody, Weekly tried to interfere with the testimony of three witnesses, including the victims. In total, Weekly called his girlfriend 140 times from jail, using his own phone number and the phone numbers of other inmates. In one phone call, Weekly told his girlfriend, "'[Y]ou wouldn't be talking to me like this, b[****], if I was out there, because you know I would smack the fire out of you.'" *Id.* at 3 (quoting record) (second alteration in original). He also told his girlfriend to threaten the other witnesses in the case.

The State charged Weekly with 2 counts of second degree rape, 1 count of second degree assault, and 3 counts of witness tampering. Weekly's case proceeded to a jury trial, and the jury found Weekly guilty on all counts. The jury answered special verdicts finding the assault and witness tampering charges involving Weekly's girlfriend were crimes against a household member, making them crimes of domestic violence.

II. ORIGINAL SENTENCE

Weekly's original sentence was imposed before the Washington Supreme Court decided *State v. Blake*, 197 Wn.2d 170. His offender score was 9+ for all counts, including 6 points for unlawful possession of a controlled substance convictions. His standard range for the rape counts

---

[1] https://www.courts.wa.gov/opinions/pdf/D2%2053583-1-II%20Unpublished%20Opinion.pdf

was an indeterminate sentence with a minimum of 210 to 280 months to life. His standard range for the witness tampering counts was 51 to 60 months.

The State and Department of Corrections each recommended life without parole based on the persistent offender statute. The State asked alternatively that all six sentences run consecutively, arguing that the free crimes aggravator authorized an exceptional sentence. Weekly argued that the free crimes aggravator did not apply because all his offenses added to his offender score and corresponding standard range for the most serious offenses, the rape convictions.

The trial court declined to impose a sentence of life without parole, concluding Weekly's convictions were not a third strike under the persistent offender statute. The trial court then imposed an exceptional sentence based on the free crimes aggravator, finding that because of Weekly's high offender score, the witness tampering counts would go unpunished without an exceptional sentence. The trial court explained that after committing the rapes and assault, Weekly "had nothing to lose" by engaging in witness tampering because "[h]e was going to get the same sentence" regardless of whether he went on to intimidate witnesses. Clerk's Papers (CP) at 180. The trial court also explained that Weekly's conduct underlying the witness tampering showed his "utter contempt for authority in the system and his willingness to do anything whatsoever" to avoid accountability. *Id.*

The trial court imposed the maximum indeterminate sentence of 280 months to life for the two rape convictions, running concurrently to each other and concurrently to an 84-month sentence for the assault conviction. The trial court also imposed a maximum sentence of 60 months confinement for each of the witness tampering counts, to run concurrently to each other but consecutive to the sentence for the rapes and assault. The resulting total indeterminate sentence

was 340 months to life. The trial court entered no written findings of fact or conclusions of law supporting the exceptional sentence.

## III. RESENTENCING

Weekly appealed his sentence, arguing he was entitled to remand for resentencing because his offender score included unconstitutional prior convictions, among other challenges to his judgment and sentence. We remanded to correct Weekly's offender score to eliminate prior convictions for possession of a controlled substance and to resentence with the corrected score.

A.      2023 Resentencing Hearing

After removing the *Blake* convictions from Weekly's criminal history, his offender score was still above 9 for all counts. In total, statutory multipliers increased his score by 5 points. His resulting standard range, based on the maximum offender score of 9+, was still an indeterminate sentence with a minimum of 210 to 280 months and a maximum of life for the rape counts and was 51 to 60 months for the witness tampering counts.

Weekly asked the resentencing court to run his sentences concurrently, but he acknowledged in his resentencing memorandum that "the free crimes aggravator could still be imposed given the convictions at trial." CP at 114. Although he had acknowledged the trial court's authority to order an exceptional sentence, he argued at the hearing that the free crimes rationale was "less compelling" absent the *Blake* convictions' impact on his offender score. Verbatim Rep. of Proc. (VRP) (Jan. 13, 2023) at 26.

The State argued that removing the *Blake* convictions did not change the standard ranges and did not change the underlying rationale for imposing an exceptional sentence under the free crimes aggravator. Thus, the State requested that the same sentence be reimposed.

4

At the resentencing hearing, the trial court explained that it was particularly troubled by the witness tampering behavior, calling Weekly's threats to his girlfriend "abusive and extreme." *Id.* at 18. The trial court said that his threatening phone calls to his girlfriend "sort of explained the mindset that was consistent with other offenses" in this case, meaning a complete devaluation and disregard for women, and the trial court did not want to allow the witness tampering to go unpunished. *Id.* at 19.

Ultimately, the trial court explained that it would impose the same exceptional sentence because "the fact that we changed the offender score because of the effect of the [*Blake*] case, in this particular case, anyway, doesn't change my view as to what the sentence is." *Id.* at 29. The trial court said repeatedly that it had the authority to impose a much longer sentence by running all counts consecutive to each other but chose not to do so in this case.

The trial court did not enter a new judgment and sentence but instead ordered that the earlier judgment and sentence "shall remain in full force and effect." CP at 191. The State and the trial court believed that an order denying *Blake* relief was sufficient and a new judgment and sentence was not needed. Again, the trial court entered no written findings and conclusions explaining the exceptional sentence.

B.     Second Appeal and Orders Entered on Remand

Weekly filed his second appeal, arguing the original judgment and sentence was void and the trial court should have entered a new judgment and sentence on remand, and the State conceded he was correct. *State v. Weekly*, No. 85903-0-I, slip op. at 3 (Wash. Ct. App. Dec. 11, 2023)

(unpublished).[2] Division One of this court remanded with instructions to enter a new judgment and sentence and issue written findings of fact and conclusions of law to support the sentence imposed.

The trial court entered a new judgment and sentence reflecting the rulings reached after the 2023 resentencing hearing. The trial court also entered findings of fact and conclusions of law supporting the exceptional sentence. The trial court specifically found that "[t]he defendant's commission of multiple felony offenses and high offender score results in some of the current offenses going unpunished," and the trial court's oral ruling reflects that the free crimes were the witness tampering counts. CP at 244.

Weekly appeals.

## ANALYSIS

### I. LEGISLATIVE BACKGROUND

Our legislature enacted the Sentencing Reform Act of 1981 (SRA), ch. 9.94A RCW, in part, to "[e]nsure that the punishment for a criminal offense is proportionate to the seriousness of the offense and the offender's criminal history" and to "[r]educe the risk of reoffending by offenders in the community." RCW 9.94A.010(1), (7). The maximum offender score for purposes of calculating standard ranges is 9+, meaning that "once a defendant's offender score reaches 9 points and above, their standard sentence remains the same." *State v. Kelly*, 4 Wn.3d 170, 183 n.9, 561 P.3d 246 (2024); *see* RCW 9.94A.510. When a defendant is convicted of multiple crimes, the offender score for each count may differ because the legislature has created "multipliers" that increase the number of points for certain similar offenses. *See, e.g.* RCW 9.94A.525(8), (17). [3]

---

[2] https://www.courts.wa.gov/opinions/pdf/859030.pdf
[3] We cite the current versions of RCW 9.94A.525, .535, and .589 because recent amendments do not impact our analysis.

Judges generally must sentence a defendant within the standard sentencing range and impose sentences for multiple offenses concurrently unless an exception applies. *See* RCW 9.94A.510, .535, .589. *See also State v. Weatherwax*, 188 Wn.2d 139, 142, 392 P.3d 1054 (2017). However, judges may impose sentences consecutively if they find substantial and compelling reasons justifying an exceptional sentence. RCW 9.94A589(1)(a), .535.

Relevant here, judges may impose an exceptional sentence under the free crimes aggravator if "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). "In other words, if the number of current offenses results in the legal conclusion that the defendant's presumptive sentence is identical to that which would be imposed if the defendant had committed fewer current offenses, then the court may impose an exceptional sentence." *State v. France*, 176 Wn. App. 463, 469, 308 P.3d 812 (2013).

RCW 9.94A.585 governs our review of an exceptional sentence. We reverse if "under a clearly erroneous standard, there is insufficient evidence in the record" to support the exceptional sentence; "under a de novo standard, the reasons supplied by the sentencing court do not justify a departure from the standard range"; or "under an abuse of discretion standard, the sentence is clearly excessive or clearly too lenient." *France*, 176 Wn. App. at 469.

Additionally, we review issues of statutory interpretation de novo. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). Our primary goal is to ascertain and carry out the intent of the legislature. *Id.* If the statute's meaning is plain on its face, we give effect to that meaning. *Id.* We do not add words to a statute that the legislature has chosen not to include. *State v. Delgado*, 148 Wn.2d 723, 727, 63 P.3d 792 (2003).

II. APPLICATION

Weekly asks that we vacate and remand for a new sentencing hearing; he argues that the trial court imposed an exceptional sentence without legal authority because it misapplied the free crimes aggravator. Specifically, Weekly argues the multipliers are the only reason he had a high offender score of 14 for his rape convictions and thus the elevated standard range meant each of his crimes was punished already. We disagree and affirm.

The language of the free crimes aggravator is plain—it authorizes an exceptional sentence if "[t]he defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished." RCW 9.94A.535(2)(c). The legislature could have created an exception for instances where multipliers are involved, but it did not do so, and we do not add language to statutes. *Delgado*, 148 Wn.2d at 727.

Weekly is correct that statutory multipliers elevated his offender score above 9, the maximum score for determining his standard range. His score of 14 included 5 points from multipliers—absent the multipliers, his score would have been exactly 9, and all his current crimes would have contributed to his standard range. *See France*, 176 Wn. App. at 469. But as we note above, the plain language of the free crimes aggravator does not distinguish between high scores *due to multipliers* and those not involving multipliers, it simply refers to crimes going unpunished because of a defendant's "high offender score." RCW 9.94A.535(2)(c). *See also,* Br. of Resp't at 18-19. Weekly has not shown any statutory basis for his argument.

As Division One of this court explained in *France*, the correct analysis required the court to determine whether Weekly would have received the same presumptive sentence if he had committed fewer crimes. 176 Wn. App. at 469. If the trial court had imposed his sentences

concurrently, Weekly would have received a total indeterminate sentence of 210 to 280 months to life based on the standard range for his rape convictions, which is based on the maximum offender score of 9+, though his true offender score would have been 14. Without the three witness tampering offenses, his true offender score for each rape conviction would have been 11, and this still would have been treated as a score of 9+ for purposes of calculating the standard range. Thus, he would have had the same standard range without the witness tampering, so his high score for the rape counts meant the witness tampering would have gone unpunished had the court not imposed an exceptional consecutive sentence.

The trial court did not depart from the plain language of the statute. And under the *France* articulation of the relevant consideration, an exceptional sentence was justified here. The fact that multipliers contributed to the presumptive sentence for his rape convictions does not affect that determination.

Weekly relies on the unpublished case *State v. Phelps*, No. 76209-5-I (Wash. Ct. App. Mar. 08, 2018) (unpublished).[4] In *Phelps*, the defendant was convicted of two counts with different offender scores. *Phelps*, No. 76209-5-I, slip op. at 2. The first count was second degree taking a motor vehicle without permission, with an offender score of 19 due to statutory multipliers and a resulting standard range of 22-to-29-months confinement. *Id.* The second count, hit and run injury, had a lower offender score of 6 with no multipliers, but because it was a more serious crime, it had a longer standard range or 33-to-43-months confinement. *Id.*

Although Phelps' offender score was lower than 9 for the hit and run count, the trial court found that imposing concurrent sentences would result in the crime of taking a motor vehicle

---

[4] https://www.courts.wa.gov/opinions/pdf/762095.PDF

without permission to go unpunished. *Id.* at 3-4. Division One reversed. *Id.* at 8. But the *Phelps* court's rationale was not that the multipliers resulted in the current offenses being punished, as Weekly claims. Instead, the *Phelps* court reasoned that "[t]he current conviction of [taking a motor vehicle without permission] in the second degree increased the offender score and standard sentence range for the conviction of hit and run injury accident. Therefore, Phelps' presumptive sentence was greater than it would have been if he had committed fewer current offenses." slip op. at 6.

This case is distinguishable. As we conclude above, the witness tampering counts did not increase Weekly's presumptive range for his most serious crimes, the rapes. Each rape conviction would have the same presumptive sentence regardless of whether Weekly went on to commit witness tampering. Thus, the trial court applied the free crimes aggravator consistent with the statutory language.

## CONCLUSION

We affirm.

No. 59562-1-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

GLASGOW, J.

We concur:

CRUSER, C.J.

VELJACIC, J.