IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of | No. 81449-4-I |
| | DIVISION ONE |
| NICHOLAS BRANDON VAN DUREN, | UNPUBLISHED OPINION |
| Petitioner. | |

CHUN, J. — Someone burglarized Lloyd Wayne Pollard's house. Around the time of the burglary, Jill Gonzales was walking and saw a man emerge from behind the house and get into a red car. After the burglary, law enforcement stopped a red car nearby. Nicholas Van Duren was a passenger. The officers had the driver and Van Duren exit the car and conducted a warrantless search of the trunk. They found golf clubs, which Pollard did not list as stolen. The officers then obtained a search warrant for the car and found items stolen from Pollard's house. The officers did not specify where in the car they found the stolen items.

The State charged Van Duren with one count of residential burglary while on community custody. Before trial, he moved to suppress the stolen items found in the car and requested a Franks[1] hearing. The trial court denied the motion and hearing request. A jury convicted Van Duren as charged. The trial court sentenced Van Duren in this case as well as two others on the same day

---

[1] Franks v. Delaware, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 5 L. Ed. 2d 667 (1978).

Citations and pin cites are based on the Westlaw online version of the cited material.

and imposed an exceptional sentence. This court affirmed his conviction on direct appeal. He submits this personal restraint petition. We deny the petition.

## I. BACKGROUND

On November 24, 2015, around 9:30 a.m., Arlington police dispatch received a suspicious vehicle call. It sent Officer Brian DeWitt to a neighborhood country club's parking lot. Upon arrival, DeWitt saw a red Toyota Corolla parked in the lot with a woman in the driver's seat; he did not see any passengers. He briefly questioned the woman and then had her leave the parking lot, taking no further action.

Around half an hour later, Gonzales was walking in the same neighborhood when she observed a red sedan driven by a woman "zigzagging" in the same parking lot. She then saw a man wearing a grey hoodie and carrying a backpack walk from behind a house and get into the car, which then left. She photographed the man walking towards the car.

Around the same time, Pollard, who was out of town, received a notification on his phone through his security system that someone was inside his home. He saw a live video showing someone he did not know walking through his house. At his request, his neighbor called law enforcement. When officers arrived, they observed a broken window at the back of the house. The neighbor let the officers into the house. Officers did not find anyone in the house, but they observed that items were strewn about and drawers appeared to have been rummaged through.

2

One of the responding officers, Pendleton Cook, testified that a witness, later understood to be Gonzales, showed him the photo she had taken, which included the red car near the burgled house. He thought there could be a connection between the car in the photo and the car Officer DeWitt approached nearby that same morning. He searched the neighborhood for the car and saw it less than two miles from the burgled home. A woman was driving, and a man later identified as Van Duren was in the passenger seat. Cook pulled the vehicle over and requested back-up. When Officer Luke Adkins arrived, the officers had the woman and Van Duren exit the car. Van Duren was wearing a grey hoodie, which he removed without being asked. The officers looked inside the passenger compartment of the car from the outside and opened the trunk. Adkins testified that he saw a set of golf clubs in the trunk. Pollard did not report any stolen golf clubs.

Law enforcement then sought a warrant to search the vehicle for items stolen from Pollard's home. The warrant affidavit omitted the officers' warrantless search of the car's trunk. They obtained the warrant. During their later search, the officers found the items missing from Pollard's house, which included several cameras, a small television set, and a purse. The record does not show where in the car the officers found the items.

The State charged Van Duren with one count of residential burglary while on community custody. Before trial, Van Duren moved to suppress the stolen items found in the car and requested a Franks hearing because of omissions in the warrant affidavit. The trial court denied the motion and the hearing request.

3

A jury found Van Duren guilty as charged.  Before sentencing, he pleaded guilty to charges in two other cases.  The trial court held a sentencing hearing for all three cases on the same day.  It imposed an exceptional sentence of 136.5 months by running his 73.5-month sentence for the count at issue in this petition consecutively with two concurrent 63-month sentences for the other two cases.  5/22/17RP 30–32.  Van Duren appealed and we affirmed the conviction.  State v. Van Duren, No. 76901-4-I (Wash. Ct. App. Jan. 22, 2019) (unpublished) http://www.courts.wa.gov/opinions/pdf/769014.PDF, review denied, 193 Wn.2d 1011, 439 P.3d 1072 (2019).  He now submits this petition.

## II. ANALYSIS

### A. Warrantless Trunk Search

Van Duren says that the trial court erred by denying his motion to suppress the stolen items found in the red car because law enforcement violated the Fourth Amendment of the United States Constitution by searching the trunk without a warrant.  He contends that the trial court's denial of his motion to suppress actually and substantially prejudiced him because it allowed the jury to consider the discovery of stolen items in the red car.  The State responds that the search was justified as a protective sweep and that Van Duren has failed to establish actual prejudice.  We conclude that Van Duren fails show that the trial court erred in admitting the stolen items.

To prevail on a personal restraint petition, the petitioner must demonstrate that they are "under restraint as defined by RAP 16.4(b) and that the restraint is unlawful under RAP 16.4(c)."  In re Pers. Restraint of Alston, 7 Wn. App. 2d 462,

466, 434 P.3d 1066 (2019). The parties do not dispute that Van Duren is under restraint; they dispute the restraint's lawfulness. RAP 16.4(c)(2) provides that restraint is unlawful if it is in violation of the United States or Washington Constitution or the laws of Washington. "The petitioner bears the burden of proving, by a preponderance of evidence, that [their] restraint is unlawful." In re Pers. Restraint of Pauley, 13 Wn. App. 2d 292, 309, 466 P.3d 245 (2020). "We review de novo conclusions of law related to the suppression of evidence." State v. Witkowski, 3 Wn. App. 2d 318, 324, 415 P.3d 639 (2018).

Van Duren bases his argument on the Fourth Amendment, which provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The Fourth Amendment requires that law enforcement obtain a warrant to conduct a search "subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

After officers had Van Duren and the driver exit the car, they conducted a warrantless search of the trunk. Officer Adkins testified that they did not "locate anybody or anything" but then said that he saw golf clubs in the trunk. He also testified that he looked into the passenger compartment of the car from the outside. Later, the officers found stolen items in the car while executing a search

5

warrant.  During the suppression hearing, Officer Cook testified that when they executed the warrant, he saw a black backpack in the front seat of the car.

Van Duren fails to bear his burden of proving unlawful restraint because he shows no nexus between the trunk search and the later discovery of the stolen items.[2]  Cf. Sun v. United States, 371 U.S. 471, 484, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963) (holding that the exclusionary rule requires suppression of evidence discovered as a direct or indirect result of a search in violation of the Fourth Amendment).  Nor does he cite any legal authority to support the proposition that admission of evidence is erroneous absent such a nexus.[3]  Officer Adkins stated that he saw golf clubs in the trunk.  Pollard did not list golf clubs among the items missing from his house.  Adkins did not say he found anything else in the trunk.  Also, Officer Cook said he saw a black backpack in the front seat.  Gonzales testified that Van Duren was carrying a backpack when he left Pollard's house.  Van Duren suggests that the fact that Officer Cook listed the items to be seized, and did not include a "catch-all clause," in the warrant affidavit shows that the officers searched the trunk, made a list of what they found, and used that list for their warrant affidavit.  But Pollard had provided a list of the items to law enforcement before the submission of the affidavit.  Van Duren does not shoulder his burden of proving that his restraint is unlawful.

---

[2] Given this conclusion, we need not address the constitutionality of the trunk search.

[3] Nor does Van Duren request a reference hearing on this issue.

6

B. <u>Franks</u> Hearing

Van Duren says the trial court erred by denying his request for a <u>Franks</u> hearing. He says that intentional omissions from the warrant affidavit required such a hearing because the omissions affected the probable cause finding. The State says that probable cause supported the search warrant and Van Duren fails to establish actual and substantial prejudice. We conclude that the trial court did not err by denying Van Duren's <u>Franks</u> hearing request.

"We review a trial court's denial of a <u>Franks</u> hearing for an abuse of discretion." <u>State v. Harris</u>, 167 Wn. App. 340, 358, 272 P.3d 299 (2012). If we determine that the trial court erred, we ask whether the error was prejudicial. Because Van Duren claims constitutional error, and he could have raised, but did not raise, the issue on direct appeal, he must prove actual and substantial prejudice. <u>See</u> <u>In re Pers. Restraint of Monschke</u>, 160 Wn. App. 479, 488, 251 P.3d 884 (2010).

Generally, once a court issues a search warrant, we presume its validity and defer to the court's determination of probable cause. <u>Harris</u>, 167 Wn. App. at 358. But if an affiant intentionally or recklessly omits material information from a warrant affidavit, a defendant may seek invalidation of the warrant. <u>Id.</u> "An omission is material if it was necessary to the finding of probable cause." <u>Id.</u> If the defendant "makes a substantial preliminary showing" of intentional or reckless omission of material information, they are entitled to a <u>Franks</u> evidentiary hearing. <u>Id.</u>

7

"Probable cause exists where facts and circumstances sufficiently establish a reasonable inference that a defendant is involved in criminal activity and evidence of the criminal activity can be found at the place to be searched." Id.

In his petition, Van Duren says that law enforcement intentionally omitted the following material information from the affidavit: (1) that Gonzales had not seen the red car herself, (2) that Gonzales did not provide Cook with a photograph of the red car, and (3) that officers conducted a pre-warrant search of the trunk. This argument fails.

First, Gonzales's written witness statement says that she saw the car herself. And her testimony at trial confirms this statement. Van Duren claims that Gonzales's statements to Officer Cook were hearsay based on an unknown woman's comments about a suspicious red car and that Cook failed to explain this in his affidavit. But the record shows Gonzales had personal knowledge about the red car; she was not relaying someone else's comments.[4]

Second, Van Duren suggests that the fact that Gonzales did not mention taking a photograph in her written witness statement means that she did not provide Cook with such a photograph. But the record does not support this inferential leap. And Gonzales's testimony at trial confirmed that she took the photo and showed it to Cook.

---

[4] Her witness statement mentions that an unknown woman approached her and asked her about a suspicious red car. But Gonzales's comments to Cook, which the officer relied on in the warrant affidavit, concern her own observations of the car, not her earlier conversation with the unknown woman.

Third, Van Duren contends the warrantless trunk search was material, its omission "deprived the magistrate of the full story of the search," and thus the court was unable to evaluate Cook's trustworthiness as an affiant. But nothing in the record indicates that officers found anything in the trunk that they relied on in their warrant affidavit. Nor is there any other indication that including the trunk search in the affidavit would have affected the court's probable cause finding.

The trial court acted within its discretion by declining to hold a <u>Franks</u> hearing.

C. Sentencing

Van Duren says the trial court erred by (1) not having a jury find the facts underlying his exceptional sentence as required by <u>Blakely v. Washington</u>, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), (2) applying a sentence aggravator that applies only to multiple current offenses, when his trial involved only one offense, and (3) failing to enter written findings of fact and conclusions of law for its exceptional sentence. The State responds that jury findings were unnecessary and the sentencing of multiple cases on the same day meant that the court could consider all three cases to be multiple current offenses. And while the State does not concede that the trial court erred by not entering written findings and conclusions, it contends that Van Duren has failed to prove a miscarriage of justice or even actual prejudice as a result of the lack of findings and conclusions. We agree with the State.

"We review de novo whether a trial court's reasons for imposing an exceptional sentence meet the requirements of the [Sentencing Reform Act of

1981, ch. 9.94A RCW]." State v. Friedlund, 182 Wn.2d 388, 393–94, 341 P.3d 280 (2015). And we review de novo a claim of violation of a defendant's right to a jury under the Sixth Amendment to the United States Constitution. State v. Alvarado, 164 Wn.2d 556, 563, 192 P.3d 345 (2008). A petitioner claiming constitutional error must show actual and substantial prejudice. Monschke, 160 Wn. App. at 488. For a claim of non-constitutional error, a petitioner must prove that the error "'constitutes a fundamental defect which inherently results in a complete miscarriage of justice.'" Id. (quoting In re Pers. Restraint of Davis, 152 Wn.2d 647, 672, 101 P.3d 1 (2004)). But if the petitioner did not have the opportunity to seek direct judicial review of the claimed error, they "must show only that [they are] under unlawful restraint under RAP 16.4(b) and RAP 16.4(c)." Alston, 7 Wn. App. 2d at 466.

The trial court sentenced Van Duren in this case along with two other cases on the same day. Based on his prior convictions, Van Duren's offender score was 13, resulting in a standard sentencing range of 63–84 months. The court sentenced Van Duren to a mid-range sentence of 73.5 months for this case, and low-range concurrent sentences of 63 months for the other two cases. The court determined that the "no free crimes doctrine" applied and imposed an exceptional sentence by running the 73.5-month sentence consecutively with the two 63-month sentences. The court explained, "[I]f your score is so high that you are now off the chart that there's a basis for an exceptional upward departure from the standard range. Because if you don't get an exceptional departure, it's

like you are being sentenced to nothing on some of your crimes." The trial court did not enter written findings of fact or conclusions of law.

### 1. Jury fact finding

When sentencing a defendant, the trial court calculates an offender score based on prior convictions. State v. France, 176 Wn. App. 463, 468, 308 P.3d 812 (2013); RCW 9.94A.525(1). Current offenses are treated as prior convictions for purposes of this calculation. France, 176 Wn. App. at 468. The offender score informs the court of the standard range sentence. Id.; RCW 9.94A.510. If a "defendant has multiple current offenses that result in an offender score greater than nine, further increases in the offender score do not increase the standard sentence range." France, 176 Wn. App. at 468. But a trial court may impose an exceptional sentence based on the free crimes aggravator. Id. at 468–69; RCW 9.94A.535(2)(c). RCW 9.94A.535(2)(c) provides that a "trial court may impose an aggravated exceptional sentence *without a finding of fact by a jury* under the following circumstances: . . . (c) The defendant has committed *multiple current offenses* and the defendant's high offender score results in some of the current offenses going unpunished." (Emphasis added.)

The United States Supreme Court decided in Blakely that, aside from the fact of a prior conviction, a jury must find facts underlying an exceptional sentence. 542 U.S. at 301. Our Supreme Court held in Alvarado, that a jury need not find the facts underlying the free crimes aggravator, because RCW 9.94A.535(2)(c) "was designed to codify the 'free crimes' factor as an automatic aggravator without the need for additional fact finding." 164 Wn.2d at

566–69. No jury fact finding is needed because the aggravator relies on only criminal history and current offenses, both of which are considered prior convictions and thus fall under Blakely's exception. Id.

Because jury fact finding is not required for a trial court to use the free crimes aggravator to support an exceptional sentence, the trial court did not err. Van Duren relies on State v. Allen to argue otherwise. 127 Wn. App. 945, 954, 113 P.3d 523 (2005) ("In this case, the trial court based its exceptional sentences on Counts II and III on its own judge-made findings of free crimes and rapid recidivism.[5] It erred by doing that, for only the jury could make such findings."). But the court in Allen interpreted *former* RCW 9.94A.535(2)(i) (2003), which stated, "The operation of the multiple offense policy of RCW 9.94A.589 results in a presumptive sentence that is *clearly too lenient* in light of the purpose of this chapter, as expressed in RCW 9.94A.010." (Emphasis added); id. at 953. Under Blakely, a jury must be the one to find that a sentence is "clearly too lenient." State v. Hughes, 154 Wn.2d 118, 140, 110 P.3d 192 (2005), abrogated on other grounds by Washington v. Recuenco, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). In light of Blakely, the legislature amended RCW 9.94A.535 to differentiate between sentencing aggravators for which a jury must find the underlying facts and ones that a court can apply without jury fact finding.

---

[5] Van Duren relies on this language to contend that the trial court erred by considering his criminal history in imposing an exceptional sentence without jury fact finding. But "rapid recidivism"—which requires jury fact finding—is not the same as criminal history. See RCW 9.94A.535(3)(t) (showing that rapid recidivism—i.e., whether "[t]he defendant committed the current offense shortly after being released from incarceration"—is to be considered by a jury).

RCW 9.94A.535(2)(c) falls into the latter category. And as the court in Alvarado noted, RCW 9.94A.535(2)(c) does not require a finding that a sentence is too lenient.[6] 164 Wn.2d at 563–64 (discussing former RCW 9.94A.535(2)(i) (2003)'s language and how it differs from RCW 9.94A.535(2)(c)).

2.      Multiple current offenses

Van Duren also contends that RCW 9.94A.535(2)(c) does not apply to him because it says "multiple current offenses" and he was convicted of only one offense for this case. But as the State notes, the term "current offense" as used in the Sentencing Reform Act is "defined functionally as convictions entered or sentenced on the same day." In re Pers. Restraint of Finstad, 177 Wn.2d 501, 507–08, 301 P.3d 450 (2013). The trial court sentenced Van Duren for three different cases on the same day and thus, multiple current offenses were involved.

3.  Written findings of fact and conclusions of law

RCW 9.94A.535 provides, "Whenever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law." A failure to do so can be grounds for remand. Friedlund, 182 Wn.2d at 393–94 ("We hold that the entry of written findings is essential when a court imposes an exceptional sentence. Because the record does not contain written findings in either of the pending cases, we

---

[6] Van Duren contends that the trial court also considered whether a standard range sentence would be too lenient and it erred by not having a jury conduct that fact finding. But the trial court did not use the word, lenient, in its decision. The record is clear that the free crimes aggravator was the basis of the exceptional sentence.

remand . . . for the entry of written findings."). The trial court did not enter such written findings and conclusions.

Van Duren contends that because this is a non-constitutional error that he has not raised before, the lower standard of review applies, and all he must show is unlawful restraint in violation of a state law. But the lower standard of review applies only when the petitioner demonstrates a reason why they did not raise an issue before. Alston, 7 Wn. App. 2d at 466. Van Duren does not contend that he was unable to raise this issue during his direct appeal, and we see no such reason. Thus, because the issue is non-constitutional, Van Duren must show "a complete miscarriage of justice." Finstad, 177 Wn.2d at 506.

In his reply brief, Van Duren says he was actually and substantially prejudiced by the trial court's failure to enter findings of fact and conclusions of law because he was unable to rely on them for purposes of his direct appeal and because he was deprived of finality. Even assuming that the constitutional actual and substantial prejudice standard applied, this is not enough to show such prejudice. The trial court explained in its oral ruling that it was relying on the free crimes aggravator in imposing an exceptional sentence. Van Duren does not explain how he was impeded from challenging the exceptional sentence on appeal. "Actual and substantial prejudice is made of sterner stuff." Finstad, 177 Wn.2d at 508–09 (holding that the petitioner was not actually and substantially prejudiced where the trial court did not enter written findings of fact and conclusions of law for an exceptional sentence entered following a guilty plea).

14

And the standard which applies here—a "complete miscarriage of justice"—requires even more.

We deny the petition.

_____
Chun, J.

WE CONCUR:

_____          _____
                                 Appelwick, J.