2016 FEB 22  AM 9:47



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
# DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72450-9-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| THOMAS JOSEPH FEELY, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: February 22, 2016 |
| | ) | |

VERELLEN, J. — Under RCW 9.94A.834, a trial court may impose an endangerment enhancement for the crime of attempting to elude a pursuing police vehicle when "one or more persons other than the defendant or the pursuing law enforcement officer" were endangered by the actions of the defendant during the commission of the crime. We conclude the plain meaning of the enhancement extends to endangering officers who were not following the defendant. Therefore, we reject Feely's claim of prosecutorial misconduct for arguing to the jury that officers who deployed spike strips were endangered by his driving.

Feely's other claims of prosecutorial misconduct also fail because he does not show the challenged statements, when viewed in context, resulted in prejudice. And because he does not show prejudice from these statements, his attorney's failure to object does not support a claim for ineffective assistance of counsel. We affirm.

FACTS

Shortly after midnight, Trooper Travis Lipton was parked in an unmarked vehicle on the shoulder of the northbound onramp to Interstate 5. A pickup truck driven by Thomas Feely passed very close to Trooper Lipton's car while merging onto the freeway. Trooper Lipton observed the truck drift into the left lane before returning to the right lane. He followed Feely.

Once Trooper Lipton caught up to Feely, he started his car's audio and video recording system. He observed Feely drift "back and forth within the right lane continuously," and cross the fog line and the "center skip line" dividing the two lanes.[1] After Feely failed to signal a lane change, Trooper Lipton activated his siren and emergency lights.

Feely continued northbound. Trooper Lipton advised dispatch of Feely's failure to stop. Feely took the next exit and ran the stop sign at the top of the exit ramp. Feely continued on the two-lane road, greatly exceeding the speed limit and drifting "over onto the oncoming lane frequently."[2] He bypassed two cars that slowed or stopped as a result. Trooper Lipton requested dispatch contact other troopers to deploy spike strips.

Police set up a spike strip, but Feely went around it. Sergeant Larry Flynn set up another spike strip. Feely attempted to drive around it but "immediately locked up" his brakes.[3] He "slid almost the whole way" towards Sergeant Flynn and stopped just short of where Sergeant Flynn was standing.[4] Feely then "started to jerk forward" towards

---

[1] Report of Proceedings (RP) (July 28, 2014) at 59, 62.

[2] Id. at 68.

[3] RP (July 29, 2014) at 184.

[4] Id.

Sergeant Flynn by the side of the road.[5] Sergeant Flynn released some slack on the spike strips so he could get farther off the road. Feely ran over one of the spike strips with his front left tire and sped away. Trooper Lipton maintained his pursuit.

After turning down a private driveway, Feely drove his truck into a swamp. He ran into the woods, leaving one shoe behind in the mud. More police officers shortly arrived, and after searching with two police dogs, they found Feely hiding in a tree. He had no shoes on and his clothes were wet. The officers took Feely into custody and smelled alcohol on his breath.

Trooper Lipton took Feely to a hospital. About an hour later, Trooper Lipton collected Feely's blood, which registered a blood alcohol level of 0.13.

The State initially charged Feely with one count of felony driving under the influence (DUI) and one count of attempting to elude a pursuing police vehicle with an endangerment sentencing enhancement. The State later amended the information to allege an aggravating circumstance under RCW 9.94A.535(2)(c): "[Feely] has committed multiple current offenses and [his] high offender score results in some of the current offenses going unpunished."[6]

At trial, Feely stipulated that he had four prior qualifying convictions, elevating the DUI to a felony. The jury found Feely guilty as charged. In a special verdict, the jury also found that a "person, other than [Feely] or a pursuing law enforcement officer, [was] endangered . . . by the actions of [Feely] during his commission of the crime of Attempting to Elude a Police Vehicle."[7]

---

[5] Id.

[6] Clerk's Papers (CP) at 15-16.

[7] Id. at 53-54.

3

The trial court sentenced Feely to 60 months for the felony DUI. The court sentenced him to 29 months for attempting to elude, plus 12 months and one day for the endangerment enhancement. The court ordered "[a]ll counts shall be served consecutively, including the portion of those counts for which there is an enhancement."[8] The court imposed this exceptional sentence after expressly finding that "the defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished."[9]

Feely appeals.

## ANALYSIS

### I. PROSECUTORIAL MISCONDUCT

Feely asserts three instances of prosecutorial misconduct violated his due process right to a fair trial. To prevail on a claim of prosecutorial misconduct, he "bears the burden of proving, first, that the prosecutor's comments were improper and, second, that the comments were prejudicial."[10]

#### a. Argument about Endangerment of Spike Strip Officers

Feely claims the prosecutor misstated the law when he argued the jury "could find Feely endangered someone other than himself or a pursuing police officer if it found he endangered the officers who deployed the spike strips."[11] We disagree.

During closing, the prosecutor argued:

---

[8] Id. at 70.

[9] Id. at 76.

[10] State v. Yates, 161 Wn.2d 714, 774, 168 P.3d 359 (2007).

[11] Appellant's Br. at 16.

So the question becomes who is endangered? Well, certainly [Feely] was endangering himself. Certainly he was endangering Trooper Lipton, and perhaps during a part of that, he was endangering Officer Pike, because Officer Pike was behind Lipton and suddenly found a tire coming his way, *but those would not qualify for you to answer yes, because it's a pursuing officer or a defendant. It has to be someone else that's in danger.*

Of course, there were other people out on the road. You can count them. There's I think three or four vehicles. Some that pulled over. Some were driving by at various points, but certainly on Kickerville, . . . he comes to a place where, unfortunately, two vehicles driving in opposite directions are in the same place. . . . Mr. Feely has to dart through, between the two of them. So those, those individuals are, certainly could, you could find that they're endangered by the driving of Mr. Feely on that night.

Other possibilities, you know, I don't know how many different vehicles are out there, *the officers that are not pursuing,* [who] did apply the stop sticks. They can be endangered by his driving, and I think at one point in the video, you can see the first officer . . . . *[y]ou can see him com[e] out and try to deploy the sticks and run back, and you can find that he's endangered by the Defendant driving as he is.*[12]

Under RCW 9.94A.834,

(1) The prosecuting attorney may file a special allegation of endangerment by eluding in every criminal case involving a charge of attempting to elude a police vehicle under RCW 46.61.024, when sufficient admissible evidence exists, to show that one or more persons other than the defendant or the pursuing law enforcement officer were threatened with physical injury or harm by the actions of the person committing the crime of attempting to elude a police vehicle.

(2) In a criminal case in which there has been a special allegation, the state shall prove beyond a reasonable doubt that the accused committed the crime *while endangering one or more persons other than the defendant or the pursuing law enforcement officer.* The court shall make a finding of fact of whether or not one or more persons other than the defendant or the pursuing law enforcement officer were endangered at the time of the commission of the crime, or if a jury trial is had, the jury shall, if it finds the defendant guilty, also find a *special verdict as to whether or not one or more persons other than the defendant or the*

---

[12] RP (July 30, 2014) at 453-54 (emphasis added).

*pursuing law enforcement officer* were endangered during the commission of the crime.[13]

We review questions of statutory interpretation de novo.[14] "The purpose of statutory interpretation is 'to determine and give effect to the intent of the legislature.'"[15] "To determine legislative intent, we first look to the plain language of the statute considering the text of the provision in question, the context of the statute, and the statutory scheme as a whole."[16] We give "undefined terms their plain and ordinary meaning unless a contrary legislative intent is indicated."[17] "If the statute is unambiguous after a review of the plain meaning," our inquiry ends.[18]

The statute does not define "pursuing law enforcement officer." The dictionary defines "pursue" as "to follow [ ] determinedly in order to overtake, capture, kill, or defeat."[19]

We conclude the plain meaning of the exclusion of any endangerment to "the pursuing law enforcement officer" relates to the risk of harm to the "following" police officer. Under this plain meaning, the spike strip officers were not "pursuing police officers" because they were not following Feely. The legislature could have also excluded "apprehending officers" from the enhancement, but it did not. Applying the plain meaning, we conclude the statute is unambiguous.

---

[13] RCW 9.94A.834 (emphasis added).

[14] State v. Evans, 177 Wn.2d 186, 192, 298 P.3d 724 (2013).

[15] Id. (quoting State v. Sweany, 174 Wn.2d 909, 914, 281 P.3d 305 (2012)).

[16] State v. Reeves, 184 Wn. App. 154, 158, 336 P.3d 105 (2014) (citing Evans, 177 Wn.2d at 192).

[17] Id.

[18] State v. Gonzalez, 168 Wn.2d 256, 263, 226 P.3d 131 (2010) .

[19] WEBSTER'S THIRD NEW INT'L DICTIONARY 1848 (2002).

Contrary to Feely's arguments, this construction of the statute is logical. The crime necessarily requires an officer in a police vehicle pursuing a defendant trying to elude that officer. The enhancement logically imposes a greater punishment if there is danger to others than the defendant and the pursuing officer. If officers who are not following are endangered, then the statute increases punishment based upon that risk that is not inherent in the mandatory elements of the crime.[20]

Therefore, we conclude the prosecutor did not misstate the law in arguing that the jury could consider Feely's endangerment of the spike strip officers for the sentencing enhancement.

b. Misstating the Burden of Proof

Feely argues that the prosecutor committed prejudicial misconduct by misstating the reasonable doubt standard in closing rebuttal argument.

A prosecutor who addresses the reasonable doubt standard in closing argument acts improperly by "'trivializ[ing] and ultimately fail[ing] to convey the gravity of the State's burden and the jury's role in assessing' the State's case against the defendant."[21] In essence, the State acts improperly when it mischaracterizes the standard as requiring anything less than an abiding belief that the evidence presented establishes the defendant's guilt beyond a reasonable doubt.[22]

---

[20] Even if we considered the enhancement ambiguous, the legislative history relied upon by Feely does not compel a different result. The bill report gives examples of the risk to children and bystanders created by eluding defenders, but still returns to the general risk to "society as a whole." H.B. REP. on Engrossed Substitute H.B. 1030, 60th Leg., Reg. Sess. (Wash. 2008).

[21] State v. Johnson, 158 Wn. App. 677, 684, 243 P.3d 936 (2010) (quoting State v. Anderson 153 Wn. App. 417, 431, 220 P.3d 1273 (2009)).

[22] See State v. Pirtle, 127 Wn.2d 628, 657-58, 904 P.2d 245 (1995); see also State v. Osman, No. 71844-4-I, 2016 WL 298802, at *7 (Wash. Ct. App. Jan. 25, 2016).

Feely contends the prosecutor "trivialized and ultimately failed to convey the gravity" of the State's burden of proof "in arguing the jury had to convict if it 'knew'" he was guilty.[23] The prosecutor told the jury that "[i]t can be very frustrating to have a jury come back and say we all knew he was guilty, but you didn't prove it beyond a reasonable doubt. Those are inconsistent."[24]

It trivializes the burden of proof to suggest that jurors can ignore the reasonable doubt instruction as long as they "know" the defendant is guilty. "Knowing" a defendant is guilty is not necessarily inconsistent with having a reasonable doubt. But Feely does not establish he is entitled to relief on appeal. First, Feely did not object at trial and therefore, he is deemed to have waived the error "unless the prosecutor's misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice."[25] Under this heightened standard, Feely must show that "(1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury's verdict.'"[26] "[R]emarks are not per se incurable simply because they touch upon a defendant's constitutional rights."[27] Feely does not establish that any prejudice could not have been cured by a curative instruction.

---

[23] Appellant's Br. at 24.

[24] RP (July 30, 2014) at 482.

[25] State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012) (citing State v. Stenson, 132 Wn.2d 668, 727, 940 P.2d 1239 (1997)).

[26] Id. at 761 (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

[27] Id. at 763; accord State v. Smith, 144 Wn.2d 665, 679, 30 P.3d 1245, 39 P.3d 294 (2001) ("Some improper prosecutorial remarks can touch on a constitutional right but still be curable."); see also State v. Warren, 165 Wn.2d 17, 28, 195 P.3d 940 (2008) (prosecutor's flagrantly improper comments in closing argument undermining the

Second, Feely cannot show a substantial likelihood that the statements affected the jury's verdict. In analyzing the prejudicial effect of a prosecutor's improper comments, we do not look at the comments in isolation, but in the context of the total argument, the issues in the case, the evidence, and the instructions given to the jury.[28]

Immediately following the statements, the prosecutor accurately restated the reasonable doubt standard:

> If you all know the Defendant committed a crime, and committed all of the, or all of the elements are proven, then you are convinced beyond a reasonable doubt. It's not just that I knew that it happened, or I knew that he was guilty. So think about [it] in those terms.[29]

Taken in context of the prosecutor's total rebuttal closing argument, the prosecutor clearly reiterated and emphasized the State's burden of proof:

> I have to prove to 12 of you beyond a reasonable doubt that I have met all of the elements of each of those crimes in order for you to return a guilty verdict.[30]
>
> . . . .
>
> There's a presumption of innocence, and the Defendant doesn't have to prove anything to you. It's my burden. The State[,] as a representative of the people of this State, it's my burden to prove those elements beyond a reasonable doubt, and I'm arguing to you that I have proven those elements.[31]
>
> . . . .
>
> The burden is what do you know? What do you believe, have an abiding belief in were the facts?[32]

---

presumption of innocence were cured by trial court giving a correct and thorough curative instruction on the reasonable doubt standard).

[28] Yates, 161 Wn.2d at 774.

[29] RP (July 30, 2014) at 482.

[30] Id. at 476.

[31] Id. at 476-77.

[32] Id. at 477.

. . . .

There is an instruction on beyond a reasonable doubt . . . . It's one for which a reason exists. It may arise from evidence or the lack of evidence. It is such a doubt that would exist in the mind of a reasonable person after fully, fairly, and carefully considering all of the evidence or the lack of evidence, and when you look at all of the pieces of evidence here, the reasonable conclusion is that Mr. Feely was driving that vehicle.[33]

. . . .

So I think I was on the reasonable doubt instruction and what it means, and it's a personal thing to each of you. . . . It's how you evaluate the evidence and how you match it up to, to the law as given to you by the Court. It's when you're convinced. It's not when you just think it might have happened, but when you're convinced it happened. You know it because you believe it happened, and you're going to believe it today. You're going to believe it tomorrow. You're going to believe it two months from now when you're telling your cousin about it. If you have reached that point, then you're convinced beyond a reasonable doubt. That's, that's the way to look at this.[34]

These statements corresponded with the trial court's reasonable doubt instruction. Juries are presumed to follow the court's instructions.[35]

Moreover, Feely's crime was captured on Trooper Lipton's vehicle's video recording system and admitted at trial. This video showed one driver driving a truck registered to Feely's parents. The officers testified that they followed Feely down the private driveway, where they found his truck stuck in a swamp with the driver side window partially rolled down and the driver side door ajar. The passenger side door was closed and an expired Washington State identification card belonging to Feely was in the center console. The officers also testified that they heard what "sounded like one person" "making his way through the brush and the sticks," and that they did not hear

---

[33] Id. at 479.

[34] Id. at 481-82.

[35] Warren, 165 Wn.2d at 28.

any sounds coming from any other direction.[36] Moreover, police dogs, who arrived within five minutes of finding Feely's truck, were able to locate him hiding nearby in a tree. These dogs led the officers to the same tree. Feely smelled of alcohol, and several hours after the incident, had a blood alcohol level of 0.13. The only element at issue at trial was identity. Given the multiple, corroborating facts identifying Feely as the driver of the truck, compelling evidence supports his convictions.

Feely relies on State v. Johnson, where, even absent an objection, the court concluded the prosecutor's misstatements were flagrant and ill intentioned and required reversal.[37] But in Johnson, the prosecutor used a puzzle analogy to explain the "abiding belief" requirement of the reasonable doubt standard.[38] The prosecutor further stated that to "be able to find reason to doubt, *you have to fill in the blank*, that's your job."[39] The Johnson court held the prosecutor's statements improperly "trivialized the State's burden, focused on the degree of certainty the jurors needed to act, and implied that the jury had a duty to convict without a reason not to do so."[40]

Feely argues the prosecutor's minimization of the State's burden of proof here is analogous to the prosecutor's improper statements in Johnson. But the prosecutor here never implied the jury had a duty to convict without a reason to do so or ever suggested that the burden of proof shifted to Feely. In context of the total closing argument, we conclude the prosecutor did not trivialize the State's burden.

---

[36] RP (July 28, 2014) at 83.

[37] 158 Wn. App. 677, 685-86, 243 P.3d 936 (2010).

[38] Id. at 682.

[39] Id. (emphasis added).

[40] Id. at 685.

Because Feely did not object at trial and fails to establish any resulting prejudice, his claim fails.

c. Argument about Prior Offenses as Motive to Flee

Feely contends the prosecutor violated the trial court's limiting instruction when he argued the jury could consider Feely's stipulated prior DUIs not only to prove he had prior qualifying convictions elevating the DUI to a felony, but also to prove he had a "motive to flee."[41]

Here, Feely requested and received a limiting instruction under ER 404(b):

> Evidence of other crimes which occurred prior to April 9th, 2014 may *only* be considered for the limited purpose of determining whether Mr. Feely has the requisite prior convictions to make this case a felony DUI. The evidence is not to be used or considered for the purpose of proving the character of a person in order to show that the person acted in conformity with that character.[42]

During the prosecutor's rebuttal closing argument, he argued:

> Well, Mr. Feely has the four priors, we know that, four prior DUIs. You can't use that, you cannot use that to say that because he was convicted four times of driving under the influence, he must have been driving under the influence this time. It's not a character thing. You can't do that.

> But what you can do is use that for another purpose, the element of the offense, a felony DUI[,] and motive. Would somebody who is driving under the influence want to be caught having four prior DUI convictions? Of course not. And that gives him a motive to flee police, and to do so in a very dangerous, reckless manner, and that's what you see on that video.

> What other motive would he have to flee the police if he was just, if he wasn't the driver? Because when you flee [in] that truck, you sure look like you're the driver at that point, don't you?[43]

---

[41] Appellant's Br. at 26.

[42] CP at 35 (emphasis added).

[43] RP (July 30, 2014) at 484-85.

Defense counsel did not object during argument.

When a trial court has ruled in a motion in limine that evidence of prior convictions are limited to proving only the fact of prior convictions and when the express limiting instruction given by the court allows that evidence "only" as proof of prior convictions, if the State wants to use the evidence for another ER 404(b) purpose, then it must ask the trial court for such a ruling.[44] Here, the prosecutor's argument is inconsistent with the court's instruction that the evidence could "*only* be considered *for the limited purpose*" of determining whether Feely had the requisite prior convictions to make the case a felony DUI, and therefore is improper.

But because Feely fails to show resulting prejudice in view of the compelling evidence of his guilt noted above, his claim fails.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In the alternative, Feely argues he was denied effective assistance because defense counsel failed to object to the prosecutor's closing arguments. We disagree. We review ineffective assistance claims de novo.[45] To establish an ineffective assistance claim, a defendant must show deficient performance and resulting prejudice.[46]

---

[44] See State v. Fisher, 165 Wn.2d 727, 748-49, 202 P.3d 937 (2009) (holding where a trial court expressly conditions the admission of evidence of physical abuse on defense counsel's making an issue of molestation victim's delay in reporting, the prosecutor's preemptive introduction of that evidence contravened the court's pretrial ruling and the requirements of ER 404(b)).

[45] State v. Sutherby, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

[46] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); State v. Nichols, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007).

Counsel's performance is deficient if it falls "below an objective standard of reasonableness."[47] To establish deficient performance, the defendant must show the absence of any "conceivable legitimate tactic" supporting counsel's action.[48] We strongly presume counsel's performance was reasonable.[49]

To establish prejudice, the defendant must show there is a reasonable probability that, but for the deficient performance, the outcome would have been different.[50] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[51] Failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim.[52]

Because the prosecutor's argument about the endangerment enhancement was not improper, defense counsel's performance was not deficient. Even assuming deficient performance as to the prosecutor's two other arguments, Feely fails to show that the arguments themselves prejudiced him, and therefore, he does not show prejudice from defense counsel's failure to object.

### III. EXCEPTIONAL SENTENCE

At sentencing, Feely had an offender score of 14 for each count. The trial court imposed the 12 month and one day endangerment enhancement to increase the base sentence for the attempting to elude conviction. It also imposed consecutive sentences

---

[47] State v. Townsend, 142 Wn.2d 838, 843-44, 15 P.3d 145 (2001).

[48] State v. Reichenbach, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

[49] Strickland, 466 U.S. at 690; State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

[50] Nichols, 161 Wn.2d at 8.

[51] Strickland, 466 U.S. at 694.

[52] Id. at 700.

for the attempting to elude and felony DUI convictions. Feely contends the court exceeded its authority in imposing the exceptional sentence. He focuses upon the trial court's oral comments that it was concerned that the endangerment enhancement would not have any impact on his punishment.

To reverse an exceptional sentence, we must determine whether

> (1) under a clearly erroneous standard, there is insufficient evidence in the record to support the reasons for imposing an exceptional sentence; (2) under a de novo standard, the reasons supplied by the sentencing court do not justify a departure from the standard range; or (3) under an abuse of discretion standard, the sentence is clearly excessive or clearly too lenient.[53]

We review Feely's challenge to the trial court's reasons for imposing an exceptional sentence de novo.[54]

We conclude the trial court properly imposed an exceptional sentence based on Feely's high offender score. A trial court may impose a consecutive sentence when it finds that the "defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished."[55] These are referred to as "free crimes."[56] Here, the court imposed consecutive sentences based on the free-crimes principle.[57] The trial court's written findings of fact expressly

---

[53] State v. France, 176 Wn. App. 463, 469, 308 P.3d 812 (2013); RCW 9.94A.585(4); State v. Law, 154 Wn.2d 85, 93, 110 P.3d 717 (2005).

[54] France, 176 Wn. App. at 469.

[55] RCW 9.94A.535(2)(c).

[56] France, 176 Wn. App. at 468.

[57] "Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535." RCW 9.94A.589(1)(a).

state that "the defendant has committed multiple current offenses and the defendant's high offender score results in some of the current offenses going unpunished."[58]

Under the Sentencing Reform Act of 1981, chapter 9.94A RCW, the sentencing range increases based on the defendant's offender score, up to a score of 9.[59] Based on Feely's offender score of 14 for each count, he faced a 60-month sentence for the felony DUI conviction alone. Therefore, *any* sentence for eluding, with or without the endangerment enhancement, would have been subsumed.

Accordingly, we conclude the trial court did not exceed its authority in sentencing Feely to consecutive terms. Even though the court referred to the endangerment enhancement, it is clear the court considered that "there's no benefit to the community" by a concurrent sentence.[60] And Feely cites no authority to support his assertion that a court may not take a sentencing enhancement into account when imposing consecutive sentences.

## IV. STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

In his statement of additional grounds, Feely argues his counsel was ineffective when she failed to interview the State's expert on dog tracking. Failure to investigate or interview witnesses may support an ineffective assistance claim.[61] But Feely's counsel thoroughly cross-examined and recross-examined the State's expert. Even assuming deficient performance, Feely fails to establish prejudice in view of the compelling evidence of his guilt.

---

[58] CP at 76.

[59] RCW 9.94A.510.

[60] RP (Aug. 18, 2014) at 25.

[61] State v. Ray, 116 Wn.2d 531, 548, 806 P.2d 1220 (1991).

Feely also argues the prosecutor committed misconduct during closing argument by playing the State's video evidence and improperly commenting on the evidence. For example, the prosecutor made a comment that something had been thrown out of Feely's truck during the pursuit. The prosecutor continued, "It takes a little while to see it, but when you're looking at it, you can see it going out the driver's side window and go over to the right, indicating that there's nobody in that right passenger seat."[62] Defense counsel objected, arguing the prosecutor's comment was "a misstatement of what the facts show."[63] The trial court instructed the jury that the prosecutor could not ask them "to speculate about what they might have seen here" but that they could "see the video" and "make their own decisions."[64] Even assuming improper conduct, Feely fails to establish prejudice.

We affirm.

WE CONCUR:

_____

_____
Spearman, C.J.

_____
Appelwick, J.

---

[62] RP (July 30, 2014) at 457-58.

[63] Id. at 458.

[64] Id. at 457-58.

17