

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 37521-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RENE CASTILLO, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, A.C.J. — At the conclusion of a one-day trial, the jury found Rene

Castillo guilty of felony violation of a no-contact order entered to protect Mr. Castillo's

teenage son, E.C. At Mr. Castillo's request, the parties had stipulated to the element that

Mr. Castillo had at least two prior convictions for violating domestic violence protection

orders.

In the defense case, Mr. Castillo sought to establish that he did not knowingly

violate the no-contact order because he misunderstood it. To counter this defense, the

prosecutor questioned defense witnesses about Mr. Castillo's prior no-contact order

violations.  Mr. Castillo contends that this questioning violated the stipulation and, together with portions of the State's closing argument, constituted prosecutorial misconduct.  He also contends that the trial court erred in overruling a defense objection, and that he received ineffective assistance of counsel.

The parties' stipulation foreclosed the State from offering additional evidence to support the element of convicted status, but the State did not agree to forego evidence about the convictions that was relevant to other elements.  The prosecutor made a flagrant error when he stated once in closing argument that he believed Mr. Castillo was guilty, but Mr. Castillo does not demonstrate that this fleeting, unobjected-to statement rose to the level of prejudice required for a new trial.  For that reason, and because Mr. Castillo demonstrates no other error or abuse of discretion, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

On an October evening in 2019, a state highway patrolman clocked Rene Castillo speeding on U.S. Route 97 and pulled him over.  The patrolman approached the car and made contact from the passenger's side, observing that Mr. Castillo was driving, a male teen was in the front passenger seat, and two young girls were in the back seat.  Thinking the girls in the back might be so young that booster seats were required, he asked the children's ages.  E.C. told the patrolman that the girls were 8 and 9 and he was 15.

After obtaining Mr. Castillo's license, registration and insurance information, the patrolman returned to his car and ran a driver's check.  Among information returned was

2

that Mr. Castillo was subject to a protection order and the protected person was a 15-year-old.  After confirming that E.C. was the protected person, the patrolman placed Mr. Castillo under arrest.  Arrangements were made for the children to be picked up by family.

Mr. Castillo had two prior convictions for violating a no-contact order, so the October 2019 violation was charged as a felony.  He proceeded to a one-day jury trial.

On the morning of trial, the prosecutor informed the trial court that the defense had accepted the offer of an *Old Chief*[1] stipulation that Mr. Castillo had twice been previously convicted for violating domestic violence court orders.  The parties agreed to a jury instruction, later provided, that said:

> The parties have agreed that certain facts are true.  You must accept as true that the person before the court, who has been identified as Defendant, Rene Castillo, has at least two prior convictions for violating the provisions of a Domestic Violence Court Order.
>
> The stipulation is to be considered evidence only of the prior conviction element.  You are not to speculate as to the nature of the prior conviction.  You must not consider the stipulation for any other purpose.

Clerk's Papers (CP) at 59 (Instruction 8).

The State called as witnesses only E.C. and the patrolman who discovered the no-contact order violation during the traffic stop.

---

[1] *Old Chief v. United States*, 519 U.S. 172, 180, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997).

E.C. testified that at the time his father was stopped for speeding, he, his father, and his two half-sisters were returning home following a several day trip to Yakima to visit E.C.'s sister. He testified he did not know until the arrest that his father was court-ordered not to have contact with him. In cross-examination, defense counsel questioned E.C. about only one thing: whether he was ever alone with his father. E.C. answered that his mother or sisters or grandmother were always around.

The highway patrolman testified about the circumstances leading to Mr. Castillo's arrest. With entry of the stipulation, the State rested.

In defense counsel's opening statement, she told jurors she expected to show "there was a different interpretation on the meaning of that protection order." Report of Proceedings (RP) at 153. The different interpretation offered was based on a handwritten "third party supervision" exception to the otherwise broad language forbidding contact with E.C.:

**Defendant is RESTRAINED from:**

Causing or attempting to cause physical harm, bodily injury, assault, including sexual assault, and from molesting, harassing, threatening, or stalking the protected person.

Coming near and from having any contact whatsoever, in person or through others, by phone, mail or any means, directly or indirectly, except for mailing or service of process of court documents by a 3rd party or contact by defendant's lawyers with the protected person.

Entering or knowingly coming within or knowingly remaining within _1000 ft_ (distance) of the protected person's ☑residence; ☑school; ☑place of employment; ☑person; ~~☑other:~~
_Third party supervised contact is allowed_

Ex. 1, at 1.

Mr. Castillo's first witness was Isabelle Baez, E.C.'s mother. Ms. Baez testified that she knew there was a no-contact order but she never saw it, and her understanding was that it only prohibited Mr. Castillo from being alone with E.C. She testified that she never allowed E.C. to be alone with his father and she knew when E.C. traveled with Mr. Castillo to Yakima that his two half-sisters would be with him.

The prosecutor conducted a contentious cross-examination of Ms. Baez, questioning her failure to review the no-contact order and her claimed understanding that it was not violated if E.C.'s eight- and nine-year-old half-sisters—one, a child with special needs—were present. His questions and Ms. Baez's answers revealed several details about Mr. Castillo's prior convictions. Mr. Castillo attaches importance on appeal to the underlined information in the following exchanges:

> Q:  And your 15-year-old son was the subject of a court order that you decided you didn't want to see the order. Is that fair?
>
> A:  I wasn't worried about it. <u>He had never—he had never spanked my son before</u>.
>
> Q:  Well, how—
>
> A:  <u>And I knew he never—would after that</u>.
>
> Q:  So, the fact that your son is being protected from his father by a court order causes you no concern or no—curiosity as to—as to the circumstances of what that order is?
>
> A:  <u>Well I knew he had to take some classes and he took them</u>. I know that.

Br. of Appellant at 5-6 (citing RP at 163), and later,

Q: Is the—is the presence of a no-contact order something that causes you concern?

A: I'm not—concerned for my son's safety, if that's what you're asking me—

Q: Okay.—

A: Far from it.

Q: Okay. But you'd agree with me that the court that signed this order was, weren't they?

A: To a certain extent I'm sure.

Q: Okay. And—you're aware that—that there were two other no-contact order[s] he's violated, right? He was convicted of?

You're aware of that, aren't you? You said you've been with him for what, 20 years?

A: Just because I'm with him for 20 years doesn't mean I know all his history.

Q: Well, but he was convicted of—no-contact order violation, wasn't he?

[DEFENSE COUNSEL]: Objection, your Honor

COURT: Basis?

[DEFENSE COUNSEL]: There—He's asking her to speculate about things that she said she had no knowledge of.

COURT: She can answer if she knows, that question.

A: No.

Q: Okay. So you don't know anything about the one in 2013.

A: Not to my knowledge. It's—I've never done a no-contact order on him.

Q: Well, I'm not asking about that; I'm asking if anybody else—if he's been—if you're aware that he was convicted of violating a no-contact order in 2013. Yes or no.

A: I know he—I know that he got in trouble. I don't know for what.

Q: Okay. How about do you know that he was convicted of violating a no-contact order—in 2018.

[DEFENSE COUNSEL]: Objection, your Honor.

COURT: Overruled. Can answer if she knows.

A: I don't know. I don't know.

Q: Would it surprise you that he was convicted of violating the order in 2018 on the same day this order [exhibit 1] was issued?

Br. of Appellant at 6-8 (last alteration in original) (citing RP at 170-72).

At this point, the defense requested a sidebar and the trial court excused the jury.

The following argument occurred:

[DEFENSE COUNSEL]: Your Honor, we had—put the stipulation in, stipulating to the prior no-contact orders, specifically in that keeping out the dates and incidents of those no-contact orders. I think—violated the stipulation by introducing the dates of each and every no-contact order and going into those no-contact orders.

THE COURT: [Addressing the prosecutor] [Y]our response?

[PROSECUTOR]: Your Honor, I'm not violating any stipulation. She—she put that into issue when she—in her answers. She's—she's—claiming that she's willfully doesn't know anything about the no-contact orders, and I'm asking her if she is aware of any other prior convictions. I wasn't getting into the facts and the—the—other convictions except that there were two prior convictions and the dates.

[DEFENSE COUNSEL]: He is providing dates. The stipulation and the jury instruction—

THE COURT: Well, what's the concern—Well, whether or not—the state has the opportunity they can go ahead and provide—have an opportunity to go ahead and present evidence as to each and every of the elements that are out there.

Regarding this, this is the first time I've ever seen a stipulation done with regards to a domestic—prior convictions for domestic violence orders out there. It's usually because we're trying to keep something else that is

out that's inadmissible, such as the nature of a sex offense or something that prohibits somebody from—possessing a firearm.

So, with regards to that—what's—what are you requesting? That because he—you're saying he violated the stipulation.

[DEFENSE COUNSEL]: I think that the date should be stricken because I think it's prejudicial.

THE COURT: All right. Overruled.

RP at 173-74.

Mr. Castillo testified in his direct examination that he was aware of the no-contact order at the time of the traffic stop but did not believe it was violated if his daughters were present. Defense counsel handed him exhibit 1 and, directing his attention to specific language, asked him to read it. He answered:

A       (Inaudible) third party—suspense—contact is allowed. Or,—
        (inaudible). Supervised contact is allowed.
Q       And what does that mean to you.
A       To me it's—to me—it means that—(inaudible) I'm not—if—if we
        are in a group as we—as we were, with my two daughters and my
        son, that's—I mean—that's okay. And it was okay. I mean, I—.
        If I—I did not—if that isn't so then I did not do this (inaudible), to—
        to (inaudible).

RP at 178. Defense counsel asked Mr. Castillo about the nature of his daughter's special needs and he testified, "She just can't talk," but she could write, and "she understands everything." RP at 179.

In cross-examining Mr. Castillo, the prosecutor challenged the notion that his eight- and nine-year-old daughters could provide "third party supervised contact" with E.C.

When the time came for closing arguments, the prosecutor began his as follows:

> Before I start [ap]plying the law that the court—has given you to the evidence and trying to persuade you *why I believe that the defendant is guilty and why he is in fact guilty*, I'd like to talk a little bit about the instructions the court gave you about certain types of evidence (inaudible) instructions.

RP at 213 (emphasis added). Defense counsel did not object. The prosecutor did not speak again of whether or why he believed Mr. Castillo was guilty.

Later, the prosecutor argued to jurors that there were ways of getting out of a restraining order, such as appeal, but "you can't ignore it and you can't twist its meaning." RP at 216. He argued this was especially true after someone has been punished for violating two no-contact orders already. Addressing Mr. Castillo's asserted understanding that he did not violate the order if other people were present, the prosecutor argued:

> He didn't just violate a provision of the order; he violated the order, the spirit of the order and the purpose of what the order is there for. The order is for the protection of his son. It says don't go to his home, don't go to his school, don't go to his workplace, don't be within 1,000 feet of him. But somehow, the defendant thinks if he has a warm body available, he can say, "Well, it was other people—as long as I have other people around then I—I'm not going to violate the order."
> Well, that's not right. I mean, yeah, as we go through life with our children, as long as there's other people around if you're inclined to beat

9

your child you're probably not going to beat your child when other people are around. But this is a special case. This is a guy who's violated no-contact orders in the past, that knows there's consequences for him, and he chooses to violate 'em anyway, and he says, "Well, I got my— a ten-year-old." What's a ten-year-old—ten-year-old's going to tell her dad not to violate the order?

RP at 218. On appeal, Mr. Castillo emphasizes the prosecutor's statement "you're probably not going to beat your child when other people are around," but no objection to that statement was made at trial.

Defense counsel argued in closing that nothing in the order told Mr. Castillo "what a supervisor is or what a third party is." RP at 222. She argued that jurors should reasonably doubt that Mr. Castillo knowingly violated the no-contact order.

Instead, the jury found Mr. Castillo guilty as charged and made a special finding that the violation was a domestic violence offense. The court imposed a standard range sentence. Mr. Castillo appeals.

ANALYSIS

Mr. Castillo contends on appeal that he was denied a fair trial through a combination of prosecutorial misconduct, trial court error and ineffective assistance of counsel. We address the alleged errors in that order. First, however, we review the extent to which ER 403 does and does not limit the State's ability to present evidence of a defendant's prior convictions.

10

I.    ER 403 AND *OLD CHIEF*

In *Old Chief*, the United States Supreme Court held that in a federal prosecution

for felon in possession of a firearm, the nature of the defendant's prior crime of

conviction is not irrelevant, but it can be unfairly prejudicial under Federal Rule of

Evidence 403.  519 U.S. at 179.  The risk of prejudice will be substantial if the evidence

offered by the State "would be arresting enough to lure a juror into a sequence of bad

character reasoning."  *Id.* at 185.  The Court held that "what counts as the Rule 403

'probative value' of an item of evidence, as distinct from its Rule 401 'relevance,' may

be calculated by comparing evidentiary alternatives," so when a defendant offers to admit

convicted felon status, and the admission has "no cognizable difference" from the official

record a prosecutor would prefer to use, the court will err if it spurns the admission.  *Id.*

at 184, 191.

The Court recognized, however, that many times there *will* be a relevant,

admissible, cognizable difference between a defendant's admission and evidence of the

prior conviction that the prosecutor proposes to offer.  Accordingly, "[t]he issue of

substituting one statement for the other normally arises only when the record of

conviction would not be admissible for any purpose beyond proving status, so that

excluding it would not deprive the prosecution of evidence with multiple utility."  *Id.* at

190.  It continued, "[I]f, indeed, there were a justification for receiving evidence of the

nature of prior acts on some issue other than status . . . Rule 404(b) guarantees the opportunity to seek its admission." *Id.*

Applying ER 403, Washington courts have adopted *Old Chief*'s exception to the State's general right to prove its case by evidence of its own choosing. *State v. Taylor*, 193 Wn.2d 691, 699, 444 P.3d 1194 (2019). The Washington Supreme Court has acknowledged the narrowness of the exception; in *Taylor*, it observed that past crimes can prove multiple elements of a current charged offense. *Id.* at 700.

The parties' positions on appeal present the question of how the trial court properly addresses the situation where the State stipulates to a defendant's prior convictions and only later sees that they are relevant to an unanticipated defense. "'A "stipulation" is an express waiver that concedes, for purposes of trial, the truth of some alleged fact, with the effect that one party *need offer no evidence to prove it* and the other is not allowed to disprove it.'" *Id.* at 697 (quoting *State v. Case*, 187 Wn.2d 85, 90, 384 P.3d 1140 (2016)) (emphasis added). It is not, as Mr. Castillo would characterize it, a promise by the State not to offer evidence of the prior conviction for any purpose.[2]

---

[2] Conceivably, the State could make such a promise, just as it can make binding promises in the plea bargain context. *E.g.*, *State v. Harrison*, 148 Wn.2d 550, 556, 61 P.3d 1104 (2003). But we doubt the State would make such a promise, and it did not make such a promise here. Nothing in the parties' stipulation foreclosed the State from offering evidence of Mr. Castillo's prior convictions for a purpose other than the mere fact that they exist.

The issue presented when the State stipulates to the *existence* of a prior conviction and later wishes to offer evidence about the prior conviction for a different purpose is the ER 403 issue addressed in *Old Chief*: does the State's evidence have a significance in the current prosecution different from the status the defendant has admitted? And does its probative value outweigh its prejudicial effect? *Cf. State v. Feely*, 192 Wn. App. 751, 768, 368 P.3d 514 (2016) (where an order in limine restricts the use of ER 404(b) evidence to a particular purpose, the State may seek court permission to offer it for another ER 404(b) purpose). With that in mind, we turn to Mr. Castillo's assignments of error.

II.     PROSECUTORIAL MISCONDUCT

Mr. Castillo contends the State committed prosecutorial misconduct in two ways: by revealing to jurors details about his prior convictions and by improper closing argument.

Prosecutorial misconduct is not attorney misconduct in the sense of violating rules of professional conduct. *State v. Fisher*, 165 Wn.2d 727, 740 n.1, 202 P.3d 937 (2009). It is, instead, a term of art that refers to "prosecutorial mistakes or actions [that] are not harmless and deny a defendant [a] fair trial." *Id*. To succeed on a prosecutorial misconduct claim, an appellant has the burden of establishing that the prosecutor's conduct was improper (as being at least mistaken) and was prejudicial. *State v. Stenson*, 132 Wn.2d 668, 718-19, 940 P.2d 1239 (1997). To show prejudice requires that the

defendant show a substantial likelihood that the misconduct affected the jury verdict. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012).

      A.     *Revealing details about Mr. Castillo's prior convictions*

Mr. Castillo contends the State improperly and prejudicially revealed to jurors five facts about his prior convictions. Jurors learned from Ms. Baez that Mr. Castillo had once spanked E.C., and that Mr. Castillo had been required to take some classes connected to the no-contact order. The prosecutor's questions suggested that one of the prior convictions was in 2013, one was in 2018, and the latter conviction occurred on the same day as the order Mr. Castillo was currently charged with violating.

To begin with, we agree with the State that Ms. Baez's testimony that Mr. Castillo spanked E.C. and that he had to take classes could not possibly be characterized as prosecutorial misconduct because those matters were volunteered by her, nonresponsively. Asked by the prosecutor if it was fair to say she did not want to see the no-contact order protecting E.C., she answered, "I wasn't worried about it. He had never —he had never spanked my son before." RP at 163. Asked by the prosecutor if she was not concerned or curious about the no-contact order in place in 2019, she answered, "Well I knew he had to take some classes and he took them." RP at 163. The prosecutor asked no follow-up questions about the spanking or the classes. Mr. Castillo does not demonstrate that the prosecutor's questions were improper; the fact that there was no objection to either question suggests that defense counsel did not perceive them as

improper at the time. *E.g.*, *State v. Gauthier*, 189 Wn. App. 30, 38-39, 354 P.3d 900 (2015) (defense counsel's decision not to object or request a curative instruction strongly suggests that the argument or event in question did not appear critically prejudicial to an appellant in the context of the trial).

The prosecutor's questions to Ms. Baez about prior convictions occurring in 2013 and 2018 were relevant cross-examination after she claimed to believe that Mr. Castillo was only prohibited from being alone with E.C. Faced with defense witnesses portraying confusion on the part of Castillo family members, the State had the right to explore whether there was bona fide confusion or whether, instead, Ms. Baez and Mr. Castillo had good reason to be knowledgeable about the no-contact order's terms but did not take it seriously. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable than it would be without the evidence." ER 401. It represents a low bar, such that "[e]ven minimally relevant evidence is admissible." *State v. Darden*, 145 Wn.2d 612, 621, 41 P.3d 1189 (2002). Generally, evidence is relevant to attack a witness' credibility or to show bias or prejudice. *State v. Lee*, 188 Wn.2d 473, 488, 396 P.3d 316 (2017) (citing *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)).

Mr. Castillo could object to the prosecutor's questions, of course, and eventually he did, as we discuss in section III. But asking a question that draws an objection (even

an objection that is sustained) does not, standing alone, demonstrate the "improper" conduct required for prosecutorial misconduct.

Nor does Mr. Castillo make a persuasive case that revealing the dates of the convictions was prejudicial. He contends on appeal that revealing the dates made clear to jurors that Mr. Castillo "had a long history of violating orders, going back at least six years," Br. of Appellant at 12, but it is pure speculation that lacking that information jurors would have made more favorable assumptions about Mr. Castillo's conviction history. He argues that "by revealing that the very order Castillo was now accused of violating was entered the same day as his 2018 conviction, the prosecutor conveyed to jurors that Castillo was not just violating orders, he was treating them with contempt and disdain." *Id.* He does not explain why the common dates reveal a contempt and disdain for court orders that other violations would not. The prosecutor's question implied that the prior violation also involved E.C., which might be prejudicial to Mr. Castillo, but not unfairly so. That is a permissible use of information about a prior conviction. *State v. Nguyen*, 10 Wn. App. 2d 797, 820-21, 450 P.3d 630 (2019) (evidence of prior convictions "as part of [the State's] narrative of [the defendant's] 'thoughts and actions in perpetrating the offense'" is permissible) (internal quotation marks omitted) (quoting *Old Chief*, 519 U.S. at 192).

And we note, on the issue of prejudice, that the trial court overruled what might have been a misconduct-based objection by Mr. Castillo that the prosecutor "violated the

stipulation by introducing the dates . . . and going into those no-contact orders." RP at 173. When a defendant has complained of prosecutorial misconduct in the trial court, we will give deference to the trial court's ruling on the matter, because it is in the best position to determine if prosecutorial misconduct prejudiced a defendant's right to a fair trial. *Stenson*, 132 Wn.2d at 719.

B.      *Closing argument*

Mr. Castillo contends it was misconduct for the prosecutor to say, in introducing his closing argument, "Before I start [ap]plying the law that the court—has given you to the evidence and trying to persuade you *why I believe the defendant is guilty* and why he is in fact guilty, I'd like to talk a little bit about the instructions . . . ." RP at 213 (emphasis added). No objection was made in the trial court. When a defendant fails to object in the trial court to a prosecutor's statements, he waives his right to raise a challenge on appeal unless the remark was so flagrant and ill-intentioned that it evinced an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury. *Stenson*, 132 Wn.2d at 719.

To say to jurors, "I believe the defendant is guilty" is a paradigm of improper conduct by a prosecutor. The "fair trial" to which a defendant is constitutionally entitled "certainly implies a trial in which the attorney representing the state does not throw the prestige of his public office, information from its records, and the expression of his own belief of guilt into the scales against the accused." *State v. Case*, 49 Wn.2d 66, 71, 298

P.2d 500 (1956); *Glasmann*, 175 Wn.2d at 704. It is "well established that a prosecutor cannot use his or her position of power and prestige to sway the jury and may not express an individual opinion of the defendant's guilt, independent of the evidence actually in the case." *Glasmann*, 175 Wn.2d at 706.

The State concedes it was misconduct for the prosecutor to speak of his belief in Mr. Castillo's guilt. It argues, however, that not only was it not a theme of the prosecutor's closing, the prosecutor never spoke of his personal beliefs again. Given its place in the argument, the State suggests it was an "awkward segue into a discussion of the Court's instructions." Br. of Resp't at 14.

Relying on *State v. McKenzie*, 157 Wn.2d 44, 53-54, 134 P.3d 221 (2006), Mr. Castillo argues that because the State concedes the comment was an improper statement of opinion, it was prejudicial. Reply Br. of Appellant at 5. That is not what *McKenzie* says. In that case, the Supreme Court rejected a claim of prosecutorial misconduct because it construed the complained-of statements in closing argument as suggesting inferences from the evidence rather than the personal opinion of the prosecutor. 157 Wn.2d at 54-56. But it then addressed how it would evaluate prejudice if the prosecutor *had* improperly stated a personal opinion:

> Moreover, even if we were to conclude that the references were improper, we could not deem them to be "so flagrant and ill-intentioned [as to] cause[ ] *an enduring and resulting prejudice that could not have been neutralized by a curative instruction to the jury*." [*State v.* ]*Brown*, 132 Wn.2d [529,] 561, [940 P.2d 546 (1997)] (emphasis added). We note that,

18

had defense counsel objected to the first of the four instances, the alleged harm would not have been compounded and would have been readily cured by an instruction to the jury. In any case, particularly when placed in the context of the whole argument, the evidence referred to in the argument, and the court's prior instructions to the jury, the challenged comments do not rise to the level of prejudice required for a new trial.

*Id.* at 57 (footnote omitted). Prejudice remains to be examined.

While a prosecutor's statement of personal belief in a defendant's guilt clearly violates the prosecutor's role in a criminal trial, the statement in this case was so fleeting, and so divorced from the remainder of the prosecutor's argument, that it could not have caused an enduring prejudice. As was true in *McKenzie*, the challenged comment could have been readily cured by instruction and does not rise to the level of prejudice required for a new trial.

III.    THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN OVERRULING MR. CASTILLO'S OBJECTION TO QUESTIONS ABOUT PRIOR CONVICTIONS

Mr. Castillo contends the trial court erred by overruling his objection when the prosecutor identified the dates of his prior convictions when cross-examining Ms. Baez. Only two objections to those questions were made.[3] When the prosecutor asked Ms. Baez if she knew about Mr. Castillo's conviction in 2018 for violating a no-contact order, defense counsel objected, but without identifying a ground for her objection. It was only

---

[3] Defense counsel objected when the prosecutor asked Ms. Baez about Mr. Castillo's prior convictions, with no reference to dates, stating "[h]e's asking her to speculate about things that she said she had no knowledge of." RP at 171. The court's ruling—that "[s]he can answer if she knows"—is not challenged on appeal. *Id.*

when the prosecutor asked Ms. Baez the following question that defense counsel objected

on the basis of the stipulation and alleged prejudice:

> Q        Would it surprise you that he was convicted of violating the order in
>          2018 on the same day this order was issued?

RP at 172.

To predicate error on a ruling admitting evidence, a party must make a timely

objection, stating the specific ground unless the ground was apparent. ER 103(a)(1). A

claim of error in applying the evidence rules is reviewed for abuse of discretion. *State v.*

*Orn*, 197 Wn.2d 343, 351, 482 P.3d 913 (2021).

If error, the only evidentiary ruling as to which error was preserved is the trial

court's ruling on this last question. RAP 2.5(a). Defense counsel's exact objection was:

> Your Honor, we had—put the stipulation in, stipulating to the prior no-
> contact orders, specifically in that keeping out the dates and incidents those
> no-contact orders. I think—violated the stipulation by introducing the dates
> of each and every no-contact order and going into those no-contact orders.

RP at 173.

The prosecutor responded that he was not violating the stipulation, and Ms. Baez's

direct testimony put her knowledge of Mr. Castillo's violations at issue. After hearing

that response, the trial court pointed out the State's right to "present evidence as to each

and every of the elements" [sic], questioned the reason for the stipulation, and asked

defense counsel, "[W]hat are you requesting? That because he—you're saying he

violated the stipulation." RP at 173-74. Defense counsel replied, "I think that the date

20

should be stricken because I think it's prejudicial." RP at 174. Defense counsel cited no rule and offered no explanation of the prejudice. It is not clear whether she was objecting to the questions as misconduct, or under ER 403, or both. The objection was overruled. *Id.*

The questions did not violate the stipulation, and if the objection was misconduct-based, we defer to the trial court on the issue of prejudice, as earlier noted. It is not apparent that the dates were prejudicial, and defense counsel offered no explanation why she believed they were. No abuse of discretion is shown.

IV.     INEFFECTIVE ASSISTANCE OF COUNSEL IS NOT SHOWN

As an alternative to his contention that it was prosecutorial misconduct for the prosecutor to state a belief in his guilt, Mr. Castillo submits that he received ineffective assistance of counsel when his lawyer failed to object. He also contends he received ineffective assistance of trial counsel in two other instances: when his lawyer failed to object to evidence that the no-contact order he was charged with violating stemmed from spanking his son and when she failed to object to the admission of exhibit 1 (the order he was charged with violating) without insisting on redactions.

To demonstrate ineffective assistance of counsel, a defendant must show that (1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability

that, except for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). If a defendant fails to establish one prong, the court need not consider the other. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996).

For this court to find deficient performance, the defendant must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment [to the United States Contitution]." *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011) (quoting *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). There is "'a strong presumption that counsel's performance was reasonable.'" *Id.* at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

*Opinion on Guilt*

Had defense counsel objected to the prosecutor's statement that he believed Mr. Castillo was guilty, the objection presumably would have been sustained. Nevertheless, as the State points out, lawyers commonly forego even valid objections during closing argument. Jurors interested in the parties' summations can find objections annoying rather than enlightening and in this case, defense counsel would be objecting to the first statement out of the prosecutor's mouth following his salutation to the judge and jury. If (as the State suggests) the prosecutor's first statement came across more as segue than substance, an objection might be viewed by jurors as nitpicking. Defense counsel knew

22

there would be an opportunity to object to any further statement of personal opinion by the prosecutor. In short, the decision not to object could have been legitimately tactical.

Mr. Castillo also fails to show prejudice. As he acknowledges, the only disputed issue at trial was whether the State proved a knowing violation of the no-contact order. His evidence and argument on that issue were fully developed. We are unpersuaded that the prosecutor's fleeting statement of opinion created a reasonable probability that jurors would be distracted from deciding that issue on the merits. We are unpersuaded that the failure to object could have made a difference.

*Evidence of spanking*

Mr. Castillo next argues that his lawyer should have objected when the prosecutor posed to Ms. Baez a question about the no-contact order that led her to reveal that the current order stemmed from Mr. Castillo spanking E.C. He characterizes the revelation as harmful, because it was "a spanking so severe it necessitated a court's intervention and protection." Br. of Appellant at 18.

To demonstrate that his trial lawyer's failure to object fell below an objective standard of reasonableness, a defendant must demonstrate that the objection would have been sustained. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 748, 101 P.3d 1 (2004). As previously observed, Ms. Baez's answer about the spanking was volunteered and nonresponsive. Mr. Castillo suggests that the trial court's own comments demonstrate that an objection on relevance grounds would have been sustained, however. He points

23

out that during the sidebar at the conclusion of Ms. Baez's testimony, the trial court said it doubted more than "one question or two questions . . . during both parties' questioning of Ms. Baez" was admissible evidence.  RP at 174.

The trial court was speaking of Ms. Baez's examination by *both* sides, and we can infer what it had in mind: Ms. Baez's understanding of what was prohibited by the no-contact order was either speculative and irrelevant, or, if it was based on what she was told by Mr. Castillo, it was inadmissible hearsay.  That said, however, because the defense opened the door, the trial court was unlikely to shut the door to the State.  *E.g.*, *State v. Gefeller*, 76 Wn.2d 449, 455, 458 P.2d 17 (1969) ("It would be a curious rule of evidence which allowed one party to bring up a subject, drop it at a point where it might appear advantageous to him, and then bar the other party from all further inquiries about it.").  That the court would not have sustained an objection is borne out by what it later *did*: when defense counsel eventually objected to the prosecutor "going into those no-contact orders," the court overruled the objection.  RP at 173-74.  Mr. Castillo does not demonstrate that an objection to the prosecutor's question would have been sustained.

Here, too, Mr. Castillo does not demonstrate prejudice.  For the jurors to hear that Mr. Castillo gave E.C. a spanking, particularly one that did not concern Ms. Baez, was less prejudicial than the evidence that Mr. Castillo had a history of conduct serious enough to result in no-contact orders and two convictions for violating them.

24

We also reject Mr. Castillo's argument that when the prosecutor stated in closing argument, "you're probably not going to *beat your child* when other people are around," he was talking about the spanking and about Mr. Castillo.  RP at 218 (emphasis added). The point of that part of the prosecutor's argument is not entirely clear, but if he was talking about Mr. Castillo and the spanking, there would be no reason not to say so.  It appears, instead, that the prosecutor was talking about whether "third party supervised contact is allowed" language in a no-contact order merely requires the presence of some "other people" or is much more restrictive.

*Exhibit 1*

Finally, Mr. Castillo contends his lawyer provided deficient representation when she did not object to the admission of exhibit 1 (the no-contact order) unless redacted to hide (1) a marked box near the top of the first page reading "Post-Conviction," (2) its statement that Mr. Castillo "has been charged with, arrested for, or convicted of a domestic violence offense," and (3) a marked box stating that it is a postconviction order prohibiting possession of firearms.  Ex. 1, at 1; Br. of Appellant at 20.  In *Taylor*, our Supreme Court held that in a prosecution for felony violation of a no-contact order, the State is entitled to have the order admitted as evidence.  193 Wn.2d at 703.  The issue of whether such an order can be redacted was not preserved in *Taylor*, but the Court commented that "a trial court may redact any portion of a no-contact order that poses a risk of unfair prejudice."  *Id.* at 702.

The State responds to this claim of ineffective assistance by arguing that defense counsel could have made the tactical judgment that juror speculation about redactions would be more prejudicial than the information redacted. In reply, appellate counsel provides a proposed redacted exhibit 1 on which nothing is blacked out—instead, it has three blocks of white space that may or may not be recognizable as redactions. *See* Reply Br. of Appellant (App.).

Appellate counsel's proposed redaction of the exhibit is the best that could have been achieved, but it does not refute the possibility that defense counsel had tactical reasons for not requesting redaction. First, in appellate counsel's best-case redaction, two of the blocks of white space are anomalous, appearing as they do in the body of a document that is otherwise packed with small single-spaced text. And the first block of white space appearing in the body of the order is followed by an incomplete sentence. At least two of the redactions were discernable as redactions, then, albeit less so than if text was obviously blacked out.

Perhaps more importantly, the jury was aware that at the time of the traffic stop Mr. Castillo was subject to the no-contact order protecting E.C. and that he had two prior convictions for violating provisions of a domestic violence court order. Defense counsel could have reasonably concluded that it would be better for the jury to understand that Mr. Castillo had a history of *two* domestic violence incidents (two convictions and an associated no-contact order) than to assume that he had a history of *three* domestic

26

violence incidents (two convictions and a third, unassociated no-contact order).  Deficient

representation is not shown.

Affirmed.[4]

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, A.C.J.

WE CONCUR:


_____
Fearing, J.



_____
Staab, J.

---

[4] Mr. Castillo also assigns error under the cumulative error doctrine, which applies when the trial court's multiple errors combine to deny the defendant a fair trial.  *State v. Lazcano*, 188 Wn. App. 338, 370, 354 P.3d 233 (2015).  It has no application where, as here, multiple errors are not found.